# M. J. McBride, Joseph F. Rodgers and E. F. McBride, Partners, doing business as McBride, Rodgers & Company, v. John Rinard and Watkin Y. Williams, Partners, doing business as Rinard & Williams, Appellants.

*Insurance—Foreign insurance companies—Agents—Act of April 4, 1873, sec. 10—Act of May 1, 1876, sec. 48.*

A foreign insurance company which has not complied with the requirements of sec. 10 of the act of April 4, 1873, establishing an insurance department, is wholly without authority to make contracts of insurance within Pennsylvania, and under the act of May 1, 1876, sec. 48, P. L. 66, an agent of such a company is personally liable on all contracts of insurance made by or through him directly or indirectly for or on behalf of any such company.

*Foreign insurance companies—Noncompliance with insurance laws—Evidence.*

In an action against persons alleged to have made a contract of insurance as agents of a foreign insurance company which has not complied with the insurance laws of Pennsylvania, where both parties assume that plaintiffs must make proofs of loss to the company within the time stipulated in their policy as a condition of recovery from defendants, evidence that plaintiffs delivered to defendants a sealed package addressed to the company containing proofs of loss and mailed by defendants is properly admissible to prove the transmission of the proofs of loss, although not evidence bearing upon the agency of the defendants.

In such a case where the defendants do not admit that the company named in the policy is an incorporated company outside of the state, evidence on behalf of the plaintiff, is admissible to show the transmission of the proofs of loss, although such evidence also shows that the company was a fraudulent one.

Under the act of May 1, 1876, sec. 48, P. L. 66, which declares the agent of a foreign insurance company which has not complied with the law shall be personally liable on the contracts of such company, the contract liability of the agent is complete the moment the loss occurs, and is payable upon proof thereof to him.

In an action against persons alleged to have made a contract of insurance as agents of a foreign company which had not complied with the insurance laws, it is improper to permit one of the defendants who had admitted that he had procured policies from the foreign company to be asked by his own counsel, Did you ever or did your firm ever act as agent for any company or companies in Pennsylvania, that have not complied with the law.

The act of May 1, 1876, sec. 48, P. L. 66, is not confined to the general agents of foreign insurance companies, but applies to local and special agents who have made contracts for such companies.

*Practice, S. C.—Assignments of error—Verdict against evidence.*

An assignment of error that a verdict is against the evidence raises a question which is for the court below on a motion for a new trial. and will not be considered by the Supreme Court.

Argued Oct. 25, 1895.   Appeal, No. 167, Oct. T., 1895, by defendants, from judgment of C. P. No. 3, Allegheny Co., May T., 1894, No. 396, on verdict for plaintiffs.   Before STER-RETT, C. J., WILLIAMS, McCOLLUM, MITCHELL, DEAN and FELL, JJ.   Affirmed.

Assumpsit to enforce personal liability of agents of a foreign insurance company which had not complied with the insurance laws.    Before McCLUNG, J.

The facts appear by the opinion.

At the trial plaintiffs offered in evidence the following aver-ments of their statement not denied by the affidavit of defense:

2. " That on December 15, 1893, proofs of loss as required by and in accordance with the terms of said policy were duly delivered, personally, to the firm of Rinard & Williams, at their office in Braddock, Pa."

Mr. Hudson: We say it is true that on December 15, 1893, an envelope containing papers was handed to Williams, but nothing said about it containing proof of loss, or that it was for the said Westmoreland Insurance Company, or had any con-nection whatever with said loss by fire, and the defendants had been in the habit of keeping papers for plaintiffs in the safe, and put them in the safe for safe keeping, etc., (reading at length from affidavit of defense, as follows), " and did not learn until long afterwards that they were claimed as proof of loss for said insurance company, and had plaintiffs told defend-ants at the time said papers were handed them that they referred to the Westmoreland Insurance Company, the defend-ants would not have taken them from plaintiffs; defendants have no knowledge about the terms of said policy, and there-fore neither affirm nor deny that notice was given in accordance therewith; and defendants have no knowledge of any proofs sent to said company or to E. J. Werner, agent of said company, by the plaintiffs, but defendants deny that they sent any proofs to said company, or to E. J. Werner, agent for said company."

The Court: That is not a denial under the rule of court. Objection overruled and bill sealed for defendant. [1]

Mr. Yost: 3. " That said defendants were at the time of the issuing of the said policy, and still are, partners doing business under the firm name of Rinard & Williams, and engaged in the insurance business as agents of insurance companies."

The Court: (Referring to the ruling on the second offer above.) We think that at least the admission should go in as prima facie evidence or evidence of the fact of the papers being delivered. We do not pass upon the question as to whether defendants would be entitled to make an explanation of the matter.

Plaintiff offered deposition of Gale Sherman.

Second interrogatory: What knowledge, if any, have you of the town of Colonial Beach, Virginia? State, if you can, its location, population and distance from the nearest railroad. *Answer:* Have known the town for the last six years, it is located on the Potomac river sixty-eight miles below Washington, D. C., in Westmoreland County, Va. The population is about one thousand in the summer and in the winter about one hundred—about forty miles from the nearest R. R. station, Fredericksburg, Va.

Mr. Hudson: We object to the second interrogatory as irrelevant and immaterial.

The Court: Objection overruled and bill sealed for defendant. [2]

Third interrogatory: What knowledge, if any, had you in the month of March, 1893, of the people and of the companies doing business at Colonial Beach, Virginia? State your means of knowledge. *Answer:* I knew all the people of Colonial Beach by living among them and associating with them there; were no incorporated companies doing business in Colonial Beach at that time.

Mr. Hudson: Objected to as before.

Mr. Yost: I propose to prove the existence of this company outside of Pennsylvania, and also that he knew of the company and was the agent of it, and received the proofs of loss later on to be offered in evidence.

Mr. Hudson: Objected to as before.

The Court: Objection overruled and bill sealed for defendants. [3]

Objections to similar testimony were overruled by the court [4–12].

When W. Y. Williams was on the stand he was asked this question: Q. You had at least two other policies from Werner & Company, had you? A. Which two, outside of this one? Q. Yes.

Objected to unless they connect it with the Westmoreland Insurance Company; what other business they had with Werner & Company might be through other companies they represented and that did business in this state.

Mr. Yost: The purpose is this: The witness has stated that he cannot recollect furnishing this application to Werner & Company. I am examining him for the purpose of finding out whether he had any other dealings with them, by virtue of which he placed other policies with them, from which they could have got this description. I want to find out whether he furnished the description for this Westmoreland policy.

By the Court: Objection overruled and bill sealed for the defendants. [13]

The court charged in part as follows:

[Your minds will, therefore, be concentrated upon the single point in the case. The language of the act is: " The agent of any insurance company of any other state or government who does not comply with the laws of this commonwealth shall be personally liable on all contracts of insurance made by or through him, directly or indirectly, for or on behalf of any such company." This was an insurance company of the state of Virginia—of another state—an insurance company that had not complied with the laws of Pennsylvania. It is not denied here that the policy of insurance passed through the hands of the defendants. They also admit that the premium was paid to them by the plaintiffs by their check, and that they deducted the ordinary commission which agents take and forwarded the balance to the general agent of this company. This act of assembly does not make simply the general agents of the company liable; it makes the party who acts for the company in the particular transaction liable. It is not necessary, in order to find against the defendants here, that you should find that they had been agents of this company in other transactions. If you find that they were the agents of that company in this particular transaction, that they were the agents by or through whom this contract was had, then they would be liable.] [14]

Verdict and judgment for plaintiffs for $1,043. Defendants appealed.

*Errors assigned* were, (1–13) rulings on evidence, quoting the bill of exceptions; (14) instructions as above, quoting them; (15) that the verdict was against the evidence.

*W. A. Hudson* of *Hudson & McCue, H. McDowell* with him, for appellants.—The question as to whether the insurance company was a fraud had nothing to do with the case, and if it was a fraud the evidence would only prejudice the jury in deciding the agency. If the insurance company was a foreign corporation and had not complied with the laws of Pennsylvania and Rinard & Williams were its agents, they would be liable, no matter how solvent the company might be, no matter how insolvent.

We submit that the word agent means the general agent duly appointed by the company, and that the words " directly " or " indirectly " refer to the contract made by him, or through others for him, for or in behalf of said company, and that he, the general agent, is liable and not the party who does the work for him.

Where one engages another to procure insurance for him, the person thus employed is the agent of the employer, and not of the company : Hartford Fire Ins. Co. v. Reynolds, 36 Mich. 502; Marland v. Royal Ins. Co., 71 Pa. 393 ; Greene v. Lycoming Ins. Co., 91 Pa. 387; Arthurholt v. Susquehanna Mut. Fire Ins. Co., 159 Pa. 1.

We submit that, under the law, Rinard & Williams were insurance brokers and acted as such for McBride, Rodgers & Co., and thereby were their agents, and not agents of the company.

*William Yost*, for appellees.—Defendants were agents of the insurance company: Com. v. Reinoehl, 163 Pa. 287 ; Pierce v. The People, 106 Ill. 11; Kister v. Ins. Co., 128 Pa. 553; McGraw v. Germania Ins. Co., 54 Mich. 145 ; Packard v. Fire Ins. Co., 77 Me. 144; Commercial Ins. Co. v. Henry Ives, 56 Ill. 402 ; Union Ins. Co. v. Chipp, 93 Ill. 96 ; Phœnix Ins. Co. v. Stires, 87 Ky. 297.

OPINION BY MR. JUSTICE DEAN, January 6, 1896:

The defendants are insurance agents doing business at Braddock in the county of Allegheny. The plaintiffs owned and operated a steam planing mill in the borough of Rankin, same county. The mill, machinery and material of the plant, excluding the land, were worth over $5,000. On March 27, 1893, the Westmoreland Insurance Company of Colonial Beach, Virginia, . issued to plaintiffs a policy of insurance against fire on their planing mill property, in the sum of $1,000 for the term of one year. There was an indorsement on the policy of " other insurance permitted," and plaintiffs held another policy in the sum of $750 in the Royal Insurance Company, on part of same property. The defendants personally delivered the Westmoreland policy to plaintiffs, and received from him the premium, $60.00, and charges. On 7th November, 1893, all the property insured was destroyed by fire. The plaintiffs further than transmitting proofs of loss, through defendants and ascertaining they were received, made no effort to collect the amount of the policy from the Westmoreland Insurance Company. The proof showed it was a foreign company, chartered by the laws of Virginia; had no office at Colonial Beach, or in Westmoreland county, Virginia. The secretary, Jas. D. Virnay, resided in the city of Washington, and was an employee of the government. Colonial Beach is a small village forty miles from a railroad; letters addressed to the company at that post office were remailed to the secretary at Washington. The evidence tended to show the company had no assets or means of payment, and its substance consisted of its paper charter which authorized it to do an insurance business.

The company had not complied with the requirements of section 10 of act of April 4, 1873, of our state, establishing an insurance department. That section is as follows:

" Section 10. No person shall act as agent or solicitor in this state of any insurance company of another state, or foreign government, in any manner whatever relating to risks until the provisions of this act have been complied with on the part of the company or association, and there has been granted to said company or association, by the commissioner, a certificate of authority, showing that the company or association is authorized to transact business in this state; and it shall be the duty of

every such company or association, authorized to transact business in this state to make report to the commissioner in the month of January of each year, under oath of the president or secretary thereof, showing the entire amount of premiums of every character and description received by said company or association in this state, during the year or fraction of a year ending with the 31st day of December preceding, whether said premiums were received in money or in the form of notes, credits or any other substitute for money, and pay into the state treasury a tax of three per centum upon said premiums; and the commissioner shall not have power to grant a renewal of the certificate of said company or association until the tax aforesaid is paid into the state treasury."

The company not having complied with the law, and being a foreign company, it was wholly without authority to make contracts of insurance within Pennsylvania.

In section 48 of act of May 1, 1876, being a supplement to the act of 1873, it is thus enacted:

"The agent of any insurance company of any other state or government which does not comply with the laws of this commonwealth, shall be personally liable on all contracts of insurance made by or through him, directly or indirectly, for or on behalf of any such company."

The plaintiffs, averring that their contract with the Westmoreland company was made by and through defendants as agents of that company, brought suit against them personally for the $1,000, the amount of their loss covered by that policy. The defendants, in their affidavit of defense, denied they were agents of the insurance company and averred that, in so far as they were connected with this contract, they were agents of plaintiffs.

At the trial in the court below, the evidence offered on both sides was somewhat conflicting, at least to the extent of being susceptible of contradictory interpretations. The court submitted it to the jury to find the truth, instructing them if defendants were agents of plaintiffs, there could be no recovery; if, however, they should find defendants were agents for the Westmoreland company in procuring the $1,000 policy, then plaintiffs were entitled to a verdict for the amount of it. There was a verdict for plaintiffs, and judgment being entered thereon,

defendants now appeal, assigning fifteen errors, thirteen to rulings of the court admitting and rejecting evidence, and two to the charge.

The plaintiffs offered to prove that after the fire they made out proofs of loss as to the Westmoreland policy, and delivered the same personally to defendants at their office in Braddock, Pa. The defendants, while not denying the receipt of a sealed package addressed to the company at Colonial Beach, did deny, in their affidavit of defense, that they had any knowledge of the contents of the package, and therefore the admission of the evidence would tend to prejudice them before the jury on the main question, as the inference might be drawn that, if they were the agents of the company to receive and transmit proofs of loss, they were also the agents to make contracts of insurance.

If the defendants, ignorant of what it contained, merely received from plaintiffs a sealed package, and dropped it in the post office, no inference that they were agents for defendants any more than they were agents for plaintiffs was warranted by that fact; they were in no different situation than that of the messenger who drops a letter intrusted to him in the post office. And the court, in its ruling, distinctly limited the effect of the evidence by saying, it was prima facie evidence of the fact of the delivery of the proofs of loss, and defendants would be entitled to make any explanation they saw proper. Plaintiffs, as precedent to showing personal liability of defendants on the contract, attempted to show loss and proof of its transmission to the foreign company. In making this proof, the first step was a delivery of the package to some one, whether agent or not, who mailed it. In this view, the evidence was admissible, and the court properly so ruled.

The second to twelfth assignments, inclusive, are to the admission of evidence, not offered to show, but the tendency of which was to show the fictitious and fraudulent character of the company. This was objected to as irrelevant. Plaintiffs' case was founded on these two averments: 1. The Westmoreland company was a foreign company not authorized to do business in this state because of noncompliance with the statutory requirements. 2. Defendants were agents of this company in making the contract, and were therefore personally

liable on the contract.   It follows, that evidence of the fraudu-
lent character of the company was irrelevant.   They were not
personally liable under the statute because of the fraud, but
because of the contract with the foreign company which was
forbidden.   And if an offer had been made, as an independent
element, to show the company was a fraudulent one, to consti-
tute liability on part of defendants, the court should, and
doubtless would have ruled it out.   The objectionable evidence
is contained in depositions taken on commission by interroga-
tories, cross interrogatories, and answers thereto.   The depo-
sitions are not printed in full by appellants, as they should have
been, and it is difficult to get before us the exact scope of the
testimony as it was before the court below, where the whole of
it was read.   However, plaintiffs' counsel and the court below,
tried the case on this theory.   The act of 1876 makes the agent
personally liable on all insurance contracts made by or through
him.   This contract is to indemnify the assured to the amount
of $1,000 on loss by fire, if due proof of loss be made to the
company within thirty days thereafter.   Plaintiffs assumed the
contract liability of the company, and therefore of the agents,
was fixed only when that liability was established by proof of
loss delivered to the company as provided in the contract, and
that the company actually had its office in another state; there-
fore, they undertook to prove a delivery to these defendants
of proof of loss for transmission to the company at Colonial
Beach, Virginia, and by witnesses at Colonial Beach and Wash-
ington, the actual receipt through the post office by the officers
of the company of these proofs.   Incidentally, and necessarily,
the answers of the witnesses at Colonial Beach to proper inter-
rogatories, inferentially demonstrated the fraudulent character
of the whole scheme.   The circumstances attending the offer
should be first noticed.   Mr. Yost, counsel for plaintiffs: " I
offer in evidence the depositions of Gale Sherman."   Mr. Hud-
son, for defendants: " I object to the deposition, with the
exception of the first question and answer, and also object to
the second as immaterial and irrelevant."   Mr. Yost: " The
purpose is to locate this company outside the state of Pennsyl-
vania."   The Court to defendants' counsel: " You admit it is a
company that comes under the act of assembly?"   Mr. Hud-
son: " I admit if such a company is in existence, and defend-

ants are agents, they are liable." By the Court: "Do you admit that it is a company that comes under that act, and if they are agents they are liable?" Mr. Hudson: "That is, if they have not complied with the law. I have no question that this company has not complied with the law; we do not admit that it is an incorporated company outside of the state. I cannot admit what I don't know." This was a very equivocal admission. If defendants had candidly admitted the company was a foreign corporation, and proofs of loss had been transmitted to and received by it, such admission would have shut out every word of the deposition now objected to; but as the case then stood, this offer by plaintiffs was justified. Mr. Yost: "I propose to prove the existence of this company outside of Pennsylvania, and also that he (the witness) knew of the company, and was the agent of it and received the proofs of loss later on to be offered in evidence."

The court in view of the theory on which the case was tried properly ruled such evidence admissible. The three witnesses to give testimony to sustain the offer resided at Colonial Beach and Washington. In testifying to the location of the company, receipt of the proofs, their transmission to Washington and delivery to the secretary, the facts, that Colonial Beach was a small village forty miles from a railway, that the package of proofs was remailed to Washington and receipted for by the keeper of a boarding house and by her delivered to an agent of the company, left room for no other inference than that the company was fraudulent. But of this defendants have no right to complain, because by objections and equivocal admissions, they imposed on plaintiffs proof of alleged material facts, from which the jury would draw an obvious inference; the facts being properly proven, the court could not exclude the prejudicial inference. It was not necessary for plaintiffs to go as far as they did, and fix liability of defendants by proving they —the plaintiffs—had after the fire complied with every subsequent condition imposed upon the assured by the contract. Both parties in the court below assumed that plaintiffs must make proofs of loss to the company within the time stipulated by the policy; that is, the right to demand payment from the company must be fixed under the indemnity contract before defendants could be called upon personally to answer under

the statute ; this, in effect, assumed the liability of the agents to be no higher than that of sureties or guarantors for the foreign company, which had violated the law.   We think the statute fairly susceptible of a more rigorous interpretation as against the agents than this.   It declares the agent of a foreign insurance company which has not complied with the law shall be personally liable on the contracts of such company.   The moment the agent makes a contract for a foreign company which has neglected to obtain the proper authority from the insurance commissioner to do business within the state, that is the inception of the agent's liability on the contract which is consummated by the loss by fire.   Proofs of loss delivered to him would be sufficient if the words of the act make him liable as one of the principals to the contract.   They do not declare he shall be personally liable in case proofs of loss are furnished the company at its office in the foreign state, or in case the office of the company cannot be found, or it is insolvent or fraudulent, but that he " shall be personally liable on all contracts made by or through him directly or indirectly."   The contract liability is complete the moment the loss occurs, and is payable upon proof thereof to him who is answerable therefor, the agent.   And this view is practically that of counsel for appellant here, to sustain his assignments of error to the admission of the testimony ; but he embodied no such proposition in his objection in the court below ; there, it in effect was, that the evidence tended to prove the fraudulent character of the company, and was therefore irrelevant.   If it was necessary, as was assumed at the trial, to prove the company's office was outside the state, and proofs of loss reached that post office, there was no error in admitting the evidence.   The assignments of error from second to twelfth inclusive are overruled.

As to the thirteenth assignment, W. Y. Williams, one of defendants, when on the stand, was asked by plaintiffs if defendants had not procured two other policies from the general agents of the Westmoreland company, and the answer was in the affirmative ; afterwards, when recalled, he was asked by his own counsel this question: " Did you ever or did your firm ever act as agent for any company in Pennsylvania that had not complied with the law ? "   This was objected to, and the objection sustained.   Such a general question had no relevancy to the

issue ; the point in controversy was, whether defendants were agents of the Westmoreland in making this particular contract, not what in the course of their business they had ever done. It is argued, the answer would have explained the admission that two other policies had been taken from the general agents of this company ; if so, that purpose was not stated, and such answer would not have been responsive to the interrogatory. As the record stands before us, the court committed no error in sustaining the objection.

The fourteenth assignment is to this instruction of the court to the jury :

" This act of assembly does not make simply the general agents of the company liable, it makes the party who acts for the company in the particular transaction liable. It is not necessary in order to find against the defendants here, that you should find that they have been the agents of this company in other transactions. If you find that they were the agents of that company in this particular transaction, that they were the agents by or through whom this contract was had, then they would be liable."

This is manifestly a correct interpretation of the intent of the legislature from the language they used. If any limitation of the penalty to general agents had been the purpose, it would have been easy to say so by merely prefixing the adjective to agent ; the omission of it leaves no doubt of the intention. And clearly, if the penalty had been restricted to general agents alone, the act would, in large degree, have failed in its purpose ; for but a small proportion of insurance contracts are effected by general agents ; nearly all are solicited by local agents ; with these, the public deal, and through them make their contracts with the companies. The fourteenth assignment is overruled.

The fifteenth assignment, that the verdict is against the evidence, raises a question which was for the court below, on a motion for a new trial. The evidence as to whether defendants were agents for plaintiffs to procure the policy, or for the company to solicit insurance from plaintiffs was clearly for the jury, and was submitted to them in an unexceptionable charge.

As it is the declared policy of the commonwealth in the interest of the public to regulate the business of insurance, the law before us, if firmly enforced by the courts, must tend to pro-

mote that policy; it is a wholesome law; works no hardship on agents of honest companies. It is but little trouble to him who is about to negotiate a contract of insurance with a property holder to ascertain from the insurance department whether the company is seeking to do business in violation of law; if it is, then he is dishonest in soliciting for it a policy; and has no reason to complain when personal responsibility is enforced by the policy holder. If the agent do not take the trouble to inquire as to the authority of his principal to do business in the state, he will save money by not taking the trouble to defend a lawsuit against him personally on the contract.

The judgment is affirmed.