ROTHSCHILD v. ADLER–WEINBERGER S. S. CO.

(Circuit Court of Appeals, Third Circuit. June 13, 1904.)

No. 28.

1. INSURANCE—STATE LAWS—EXTRATERRITORIAL OPERATION—LIABILITY OF AGENTS.

Pa. Act May 1, 1876 (P. L. 66), § 48, declaring that the agent of any insurance company of any other state or government which does not comply with the laws of Pennsylvania shall be personally liable on all contracts of insurance made by or through him, directly or indirectly, for or on behalf of the company, applies only to contracts of insurance on property in Pennsylvania.

2. SAME—POLICY LIMITATIONS.

A provision of a marine policy that all claims thereunder should be void unless prosecuted within 12 months from the date of the disaster was applicable to a suit against insurance brokers issuing certain policies on behalf of foreign companies which had not complied with the laws of Pennsylvania, under Pa. Act May 1, 1876 (P. L. 66), § 48, declaring that any agent of a foreign insurance company which has not complied with Pennsylvania laws shall be personally liable "on all contracts of insurance" made by or through him on behalf of any such company.

In Error to the Circuit Court of the United States for the Eastern District of Pennsylvania.

For opinion below, see 123 Fed. 145.

James C. Sellers, for plaintiff in error.

Horace L. Cheyney, for defendant in error.

Before ACHESON, DALLAS, and GRAY, Circuit Judges.

DALLAS, Circuit Judge. On the trial of this case in the Circuit Court, the jury was directed to find a verdict in favor of the plaintiff below for $5,385.29, the learned trial judge reserving the question whether there was any evidence to go to the jury in support of the plaintiff's claim. A verdict was rendered accordingly, and, after argument upon the motion of the defendant for judgment in his favor non obstante veredicto, a judgment for plaintiff was entered upon the verdict. Thereupon the defendant sued out this writ of error.

The action was based upon section 48 of the Pennsylvania statute of May 1, 1876 (P. L. 66), to wit:

"The agent of any insurance company of any other state or government, which does not comply with the laws of this commonwealth, shall be personally liable on all contracts of insurance made by or through him, directly or indirectly, for or in behalf of any such company."

---

¶ 2. Conditions in insurance policy as to time for bringing suit, see notes to Steel v. Phœnix Ins. Co., 2 C. C. A. 473; Rogers v. Home Ins. Co., 35 C. C. A. 404.

The facts are sufficiently stated in the opinion of the court below, as follows:

"The plaintiff, a citizen of Louisiana, in March, 1900, obtained the three marine policies in question through a firm of ship brokers in New Orleans. The vessel traded between New Orleans, Mobile, and Honduras, and was at the first-named port when the policies were written. The New Orleans broker applied for the insurance to another firm of brokers in Tampa, Fla., who in turn applied by mail to the defendant Rothschild & Co. The application was received at the defendants' office, 411 Walnut street, Philadelphia, and two of the policies were afterwards mailed by them from Philadelphia to the Tampa brokers, by whom they were forwarded to New Orleans. In August following, the New Orleans brokers wrote to the defendants at Philadelphia for a third policy, and this was mailed directly to New Orleans. The premiums were sent by mail to the defendants at Philadelphia, and were there received. Later several slips, or permits, were obtained from them, also by mail, to be attached to the policies. On these slips the defendants described themselves as agents for the respective companies. The policies were all issued by companies foreign to Pennsylvania, and none of them had complied with the laws of that state. There was evidence that the written portion of two of the policies was in the handwriting of the defendants' bookkeeper, and had been filled in at their office in Philadelphia. It did not appear where or by whom the other policy had been filled in, but the defendants did not deny that they had prepared and mailed it in Philadelphia, nor did they deny at the trial that they were agents of the respective companies by whom the policies were issued. The loss occurred in September, 1900, and this suit was brought by the insured on February 1, 1902, under the foregoing section, to recover from the defendants the amount of the loss."

Is section 48 of the Pennsylvania statute of May 1, 1876 (P. L. 66), properly applicable to a policy of insurance issued to a person not a citizen nor a resident of Pennsylvania, upon property not situated within that state? No doubt, the language of the section is inclusive of "all contracts of insurance," but as the liability it imposes is an extraordinary and penal one, it should not be held to embrace anything beyond what clearly appears to have been contemplated by the Legislature, and for ascertainment of the legislative intent attention is not to be confined to the words employed, but the familiar rule must be applied, "that a thing may be within the letter of the statute and yet not within the statute, because not within its spirit, nor within the intention of its makers." Holy Trinity Church v. United States, 143 U. S. 459, 12 Sup. Ct. 511, 36 L. Ed. 226. As was said in the case just cited, "We cannot think the Legislature intended to denounce with penalties a transaction like that in the present case," and that it did not in fact intend to do so becomes apparent when other of the Pennsylvania statutes upon the subject of insurance are considered, as they should be, in connection with the particular section in question. Bacon's Abr. "Statute" (1, 3). These statutes, in so far as material—including, for completeness, the section heretofore quoted—are as follows:

The act of April 4, 1873 (P. L. 20), provides:

"Sec. 9. It shall be unlawful for any person, company or corporation, to negotiate or solicit within this state any contract of insurance, or to effect an insurance or insurances, or pretend to effect the same, or to receive and transmit any offer or offers of insurance, or receive or deliver a policy or policies of insurance, or in any manner to aid in the transaction of the business of insurance without complying fully with the provisions of this act.

"Sec. 10. No person shall act as agent or solicitor in this state of any insurance company of another state, or foreign government, in any manner

whatever relating to risks, until the provisions of this act have been complied with on the part of the company or association, and there has been granted to said company or association, by the Commissioner, a certificate of authority, showing that the company or association is authorized to transact business in this state; and it shall be the duty of every such company or association, authorized to transact business in this state, to make report to the Commissioner in the month of January of each year, under oath of the president or secretary thereof, showing the entire amount of the premiums of every character and description received by said company or association in this state, during the year or fraction of a year ending with the thirty-first day of December preceding, whether said premiums were received in money or in the form of notes, credits or any other substitute for money, and pay into the state treasury a tax of three per centum upon said premiums; and the Commissioner shall not have power to grant a renewal of the certificate of said company or association until the tax aforesaid is paid into the state treasury.

"Sec. 11. Companies to which certificate of authority are issued, as provided in the preceding section, shall, from time to time, certify to the Commissioner the names of the agents appointed by them to solicit risks in this state; and no such agent shall transact business until he has procured from the Commissioner a certificate, showing that the company has complied with the requirements of the act, and that the person named in said certificate has been duly appointed its agent."

"Sec. 14. That any person or persons, or corporation, receiving premiums or forwarding applications, or in any other way transacting business for any insurance company or association not of this state, without having received authority agreeably to the provisions of this act, shall forfeit and pay to the commonwealth the sum of five hundred dollars for each month or fraction thereof during which such illegal business was transacted, and any company not of this state doing business without authority, shall forfeit a like sum for every month or fraction thereof, and be prohibited from doing business in this state until such fines are fully paid."

The act of May 1, 1876 (P. L. 53), which is a supplement to the act of April 4, 1873, provides:

"Sec. 47. Any person transacting business within this commonwealth as the agent of an insurance company of any other state or government, without a certificate of authority, as required by the act to do which this is a supplement, shall be guilty of a misdemeanor, and upon conviction thereof shall be sentenced to pay a fine of five hundred dollars, but this section shall not be held to prevent the Insurance Commissioner from pursuing the remedy or remedies provided in the act aforesaid. The person or persons on whose complaint such conviction is had, shall receive one half of the fines so paid, provided the insurance commissioner or his deputy is not the complainant.

"Sec. 48. The agent of any insurance company of any other state or government, which does not comply with the laws of this commonwealth, shall be personally liable on all contracts of insurance made by or through him, directly or indirectly, for or in behalf of any such company."

The act of April 26, 1887 (P. L. 61), amended section 14 of the act of April 4, 1873, so as to read:

"That any insurance company or association not of this state, doing business without authority agreeably to the provisions of this act, shall forfeit and pay to the commonwealth the sum of five hundred dollars for each month, or fraction thereof, during each month, on and after the passage of this act, which such illegal business was transacted, and be prohibited from doing business in this state until such fines are fully paid. And that any person or persons, or any agent, officer, or member of any corporation paying, or receiving or forwarding any premiums, applications for insurance, or in any manner securing, helping, or aiding in the placing of any insurance, or effecting any contracts of insurance upon property within this commonwealth, directly or indirectly, with any insurance company or association not of this

state, and which has not been authorized to do business in this state under the terms of this act, shall be guilty of a misdemeanor, and, on conviction thereof, shall be sentenced to a fine of not less than one hundred dollars nor more than one thousand dollars, and upon conviction of a second offence shall be sentenced to pay a like fine and undergo an imprisonment not exceeding one year, or either, in the discretion of the court.".

The first-mentioned of these acts is the earliest one regulating insurance by foreign companies which is now in force in Pennsylvania. It established "a distinct department * * * charged with the execution of the laws of this state in relation to insurance," and it is evident that by it and the later acts it was purposed to create and perfect a general system of regulations and requirements respecting the transaction of business by foreign companies within the limits of the state, with the manifest object of affording protection to those taking insurance from such companies,. either directly or through agents. But whom was it intended to protect? Presumably, of course, the citizens and the residents of Pennsylvania, or, at the utmost, such persons, also, as, being neither citizens nor residents of that state, might have insurable interests in property there situated. Waiving the question which has been argued as to the competency of any state to affect by such legislation persons and things not within its territorial boundaries, we are satisfied that in this instance no attempt to do so was made. The words "within this state," and "in this state," as they occur in sections 9, 10, and 11, p. 26, of the act of 1873, and the words "within this commonwealth," as they occur in section 47, p. 66, of the act of 1876, and especially the provision of section 10 of the act of 1873 for reports for taxation, persuasively indicate, if they do not positively show, that this system of legislation was not intended to apply to such a case as this; and, finally, we have in the act of 1887 the phrase "any contracts of insurance upon property within this commonwealth," which, in our opinion, is tantamount to an express legislative definition of the intended scope of the whole series of statutes. And, as the section immediately involved is included in the series, it follows that the contracts upon which the agent is thereby made liable are such contracts of insurance as are upon property in the commonwealth of Pennsylvania, and no others.

Furthermore, this action, even if otherwise maintainable, was, we think, barred by the clause, which each of the policies contains, "that all claims under this policy shall be void unless prosecuted within twelve months from the date of the disaster." The disaster here involved occurred in September, 1900, and the suit was begun on February 1, 1902. The terms of this provision were therefore met, and that it would be enforceable in favor of the companies themselves seems not to be denied, and we think is unquestionable. It is contended, however, that the defendant below was not entitled to benefit by it, because, as is argued, it is a "subsequent condition imposed upon the assured by the contract," like the ordinary provision for proofs of loss, which it was said in McBride v. Rinard, 172 Pa. 543, 33 Atl. 750, need not, to consummate the agent's liability, be complied with by furnishing proofs of loss to the company. But we are not dealing with a condition affecting the agent's liability, but with a contractual limitation of the time within which his liability, assuming its unconditional existence, may

be enforced, and the real and only question is whether this limitation is properly applicable to an action founded upon the forty-eighth section of the act of 1876. That section, as we have said, is a penal one, and the particular penalty it prescribes is not open to conjecture. It is distinctly specified. It is that the offending agent "shall be personally liable on all contracts of insurance made by or through him." The contracts are not to be extinguished. They must continue in force, for otherwise there would be nothing of which liability on the contract could be predicated. If it was not intended that the agent would be liable precisely as if he had been a principal party to the contract, it would, we think, be difficult to perceive that any penalty whatever was designated. We need not question the correctness of the statement of the Supreme Court of Pennsylvania (McBride v. Rinard, supra) that it would be a mistake to assume "the liability of the agent to be no higher than that of sureties or guarantors for the foreign company which had violated the law." As was said by that court, "the moment the agent makes a contract for a foreign insurance company which has neglected to obtain the proper authority from the Insurance Commissioner to do business in this state, that is the inception of the agent's liability on the contract, which is consummated by the loss by fire." But the liability is "on the contract," and therefore, though compliance with "every subsequent condition imposed upon the assured" may not be requisite to establish its existence, it ceases to be enforceable upon the expiration of the period contractually limited for its enforcement. The agreement for the limitation in this case, and the reasons upon which such agreements are founded, are quite as appropriate to an action against an agent as to a suit against a company, and it is not supposable that the Legislature designed that in this regard the assured should have, as against the former, a policy more favorable to himself than that which he had been content to accept from the latter.

The views we have expressed necessitate the conclusion that the judgment entered for the plaintiff below was erroneous. Therefore that judgment is reversed, and the cause will be remanded to the Circuit Court with direction to enter a judgment for the defendant notwithstanding the verdict.