CITIZENS' BANK & TRUST CO. v. SCOTT & SANDERS.—72 S. W. (2d) 1064.

Eastern Section. December 16, 1933.

Petition for Certiorari denied by Supreme Court, May 19, 1934.

R. B. Cassell, of Harriman, for appellants.

J. W. Stone, of Harriman, for appellee.

PORTRUM, J. This is a suit to collect a fire insurance policy
from the agent who wrote the policy in a company not authorized
to do business in the state, under authority of Shannon's Code,
section 3316 (Code 1932, section 6141), which makes an agent per-
sonally liable to the insured for writing a policy in a company not
authorized to do business in this state. The material facts are
reflected in a decree entered by the chancellor in the cause, and
which is here set out in part:

"(1) That the defendant, L. O. Scott, and F. T. Sanders, doing
an insurance business as insurance agents, under the firm name
and style of Scott & Sanders, a copartnership, procured for the
complainant, Citizens Bank & Trust Company, Trustee, a policy of
fire insurance in the sum of $1,500 written in the National Secur-
ities Underwriters, which is a foreign insurance company and not
licensed to do business in the State of Tennessee. That this policy
was made to become effective on December 9, 1928, and to cover
certain staves the properties of the complainant or held in trust
by it, and located about one-half a mile east of Annadel, in Morgan
County, Tennessee, and was to continue in effect for one year from
the said date of December 9, 1928. That thereafter, on, to-wit,
April 14, 1929, and while said policy was in effect, the said staves
were destroyed by fire. That at the time of the fire that the staves
so destroyed were worth in excess of $1,500, the face of the policy.

"(2) That under Section 3316 of Shannon's Code, in effect at
the time of the fire, the defendants were liable to the complainant
for the amount of the face of the policy, $1,500, with interest on
the same from the date of the filing of the bill in this cause, to-wit,
April 2, 1930."

The next paragraph of the decree provides for a recovery in
favor of the complainant of the amount of the policy with interest,
or the sum of $1,755.50, and all the costs of the cause. From this
decree the defendants have appealed to this court, and are advanc-
ing several defenses; we will take them up in their order as appears
from the asignments of error, adding such statements of fact as
we think essential to their disposition.

(a) The defendants collaterally attack the legality of the
charter of the complainant, Citizens' Bank & Trust Company. It
is insisted that the charter was never properly recorded in the
register's office of Morgan county, the situs of the corporation;
that under the corporate laws of Tennessee an incorporation is not

perfected until the charter is legally recorded, and is subject to collateral attack. Brewer v. State, 7 Lea (75 Tenn.), 682; Hunter v. Swadley, 141 Tenn., 156, 207 S. W., 730. The General Incorporation Act of 1875, Shannon's Code, Section 2026, provides:

"The said instrument, when probated as hereinafter provided (in section 2542), with application, probates, and certificates, is to be registered in the county where the principal office of the company is situated, and also registered in the office of the secretary of state; . . . and a certificate of registration given by the secretary of state, under the great seal of the state, shall, when registered in the register's office of said county, with the facsimile of said seal, complete the formation of the company as a body politic; and the validity of the same in any legal proceeding shall not be collaterally questioned."

In this case the charter, with application, and so forth, was registered in the office of the register of Morgan county, and sent to the secretary of state for his certificate, and returned to the register of the county for the registration of the secretary of state's certificate, together with the facsimile of the seal, but, while the instrument was in transit, the register, who was a new official, received a deed for registration, and placed it on the record next to the registered charter then appearing on his books, so, when the charter was again returned to him with the secretary of state's certificate, it was necessary that he register this certificate following the deed which was placed immediately after the charter, and this placed the registered certificate two pages over from the charter, that is, the charter was registered in Deed Book Q, volume 2, pp. 226-230, the deed then followed on page 231, and the secretary of state's certificate and facsimile of the seal was registered on page 232. A notation in ink was made at the bottom of the charter, on page 230 as follows: "See page 232 for certificate." The charter was duly indexed, but there was no index of the certificate, but the index led to the notation at the foot of the charter, which notation directed the searcher to the page of the record where the certificate was registered. The notation is in the handwriting of the deputy register.

It is insisted this is not a legal registration, because of the absence of an index of the secretary of state's certificate.

In support of this contention the case of Wilkins v. Reed, 156 Tenn., 321, 300 S. W., 588, is cited; in the case the deed was properly executed, but the register failed to place upon record the signature of the notary public who took the acknowledgment, and the court held this registration a sufficient notice to the public. There is a statement: "That the record, including the required index, shall be in such shape that examination thereof will supply notice to the searcher of the previous transfer of the identical

property." We think in this case the index leads to the information which will supply the notice to the searcher.

But the defendants are estopped to advance the defense of a defective registration for the reason they dealt with the Bank & Trust Company as a corporation; they entered into direct negotiation with it, and wrote the policy in its name, and certainly the name "Citizens Bank & Trust Company," indicates the name of a corporation and not of a partnership. When a private person enters into a contract with a purported corporation, he thereby admits the existence of the corporation, and, when a policy is payable to the Union Bank & Trust Company, trustee, and there is nothing else to show the nature of the company, the payee is estopped to deny the company's corporate existence, for it may be assumed that such company was a corporation; the name not being particularly applicable to a firm. Ingle System Co. v. Norris & Hall, 132 Tenn., 472, 178 S. W., 1113, 5 A. L. R., 1578; Tenn. Automatic Lighting Co. v. Massey (Tenn. Ch. App.), 56 S. W., 35; Hunter v. Swadley, 141 Tenn., 157, 207 S. W., 730. This defense is not sustained.

(b) The second assignment is that the chancellor permitted a recovery against the defendant, notwithstanding the insurance company had valid defenses to interpose against the collection of the policy. In other words, that the chancellor held the defendants personally liable, and would not permit them to advance the defenses available to the insurance company under the policy. The decree is more or less silent upon this question, but the appellees insist the chancellor did permit the defendants the right to avail themselves of any defense the insurance company may have been entitled to. At any rate, the defendants were entitled to the defenses open to the insurance company, with the exception of a failure to file formal proof of loss. "While the liability of the agents is statutory and not upon the policy, it cannot be enforced by insured unless he has complied with the condition subsequent of promissory warranty contained in the policy" (Bussey v. Grantham, 23 Ga. App., 708, 99 S. E., 236; Drummond v. White-Swearingen Realty Co. [Tex. Civ. App.], 165 S. W., 20), although conditions of the policy as to proof of loss are not applicable to an action against the agent (Noble v. Mitchell, 100 Ala., 519, 14 So., 581, 25 L. R. A., 238; McBride v. Rinard, 172 Pa., 542, 33 A., 750).

(c) It is next insisted that the bank had no insurable interest in the property destroyed. The bank was trustee of certain property to operate and apply the profits and proceeds in the payment of a debt owed it by the beneficiary. The insurance was taken out for the benefit of the beneficiary, and he owned the property of course, and there was an insurable interest. "A person in possession of property holding the legal title as trustee, but hav-

ing no personal interest in it, may procure insurance thereon, and it is immaterial whether the trustee has finally accepted the trust, if, at the time of the insurance he is in fact the trustee, or whether he could have asserted his title under the trust, if he is in actual possession of the property under his claim as trustee." Fire Insurance, 26 C. J., p. 35, section 19, and a long list of notes thereunder.

(d) It is said there can be no recovery because the value of the property destroyed at the time of the fire is not proven. There is proof of the cost of the manufacture of the article, as well as proof of the market value and both of these items exceed the amount of insurance; there is no merit. in this contention.

(e) Next it is insisted that there was a breach of the "lumber clear space clause." We are not. called upon to examine the evidence to establish this breach or to review this issue, for the reason the defense was not made in the pleadings.

(f) There was no breach of the condition that the agreement or policy should be void "if the interest of the insured be other than unconditional and sole ownership." The written provision of the policy designated the payee as a trustee. "As a general rule, where an insurer at the time of the issuance of a policy has knowledge of existing facts, which if insisted upon would invalidate the contract from its inception, such knowledge constitutes a waiver of conditions in the contract inconsistent with such facts, and the insurer is estopped thereafter from asserting the breach of such condition." Life, etc., Insurance Co. v. King, 137 Tenn., 685, 195 S. W., 585.

"Where two clauses of a fire policy are so repugnant that they cannot stand together, the first governs, rather than the last, especially where the first clause expresses the chief object of the policy." Laurenzi v. Atlas Insurance Co., 131 Tenn., 644, 176 S. W., 1022. And written provisions are given precedence over printed provisions when the two are repugnant.

(g) During the progress of the trial, the chancellor, at a former term, taxed the complainant with the cost accrued as a penalty for a continuance; the final decree taxed all the costs against the defendants, and the latter action of the court is assigned as error, for the reason the court could not review and annul the former order after it became final. This was an oversight, but the error assigned is well taken. This character of error. is generally corrected by a remand to the clerk and master of the lower court to retax the cost; however, in this case only $23.75 of cost accrued in the lower court, excluding the cost of the transcript of the record to this court, and only a small portion of this accrued after the order taxing the complainant with the costs, and, since the amount is insignificant, we make the correction here by taxing the complainant with $20 of the costs, the balance, including the cost of

the appeal, to be taxed against the defendants, who are the appellants in this court, and the sureties on their appeal bond. The decree thus modified is affirmed.

Snodgrass and Thompson, JJ., concur.