ARWIN BATES v. ORSEMUS P. BATES AND ELLEN M. BATES.

*Deeds—Correction of description.*

The description in a deed will not be so changed by a court of equity as to increase the amount covered by it unless the showing that such a correction should be made is very clear, and it appears that both parties to the deed had understood that it was to include the amount claimed, or that complainant had so understood, and defendant had so acted as to justify a person of ordinary prudence in so understanding under the circumstances.

Appeal from Branch.   (Pealer, J.)   Jan. 7.—April 22.

BILL to correct description in deed.   Complainant appeals. Reversed.

*Barlow & Loveridge* for complainant.

*Simon B. Kitchel* and *Wm. W. Osborne* for defendants.

SHERWOOD, J.   The bill in this case is filed to correct an alleged mistake made in the description of land intended to have been conveyed by the defendants to the complainant in a deed made on the 25th day of October, 1882, and recorded in the office of the register of deeds in the county of Branch,

in volume 64, on page 417, on the 12th day of December, 1882. The description contained in the deed is:

"N. W. $\frac{1}{4}$ of S. E. $\frac{1}{4}$ and the N. $\frac{1}{2}$ of S. W. $\frac{1}{4}$ of S. E. $\frac{1}{4}$ of sec. six, west of the river, except three acres owned by Teachout, containing forty acres, more or less; also the equal undivided one-fourth of the S. $\frac{1}{2}$ of S. W. $\frac{1}{4}$ of N. E. $\frac{1}{4}$ of section six, excepting six acres deeded to Richard Cook—all in town seven south of range six west."

The defendants are husband and wife. It is claimed by complainant that the description should be the "N. W. $\frac{1}{4}$ of S. E. $\frac{1}{4}$ and the N. $\frac{1}{2}$ of S. W. $\frac{1}{4}$ of S. E. $\frac{1}{4}$ lying west of the river, except three acres in the south-west corner of section six, and also four acres in the S. W. corner of N. E. $\frac{1}{4}$ of section six, being forty rods east and west by sixteen rods north and south; also the undivided one-half of the south half of the S. W. $\frac{1}{4}$ of the N. E. $\frac{1}{4}$ of section six, except the four acres above described and six acres heretofore deeded to Richard Cook."

Complainant further avers that he gave in exchange for the land thus purchased other real estate, and O. P. Bates was to pay two notes which complainant then owed to the estate of his father, and complainant was to release an equal amount of the personal estate of his father which was coming to him, and that he fully performed his agreement.

Complainant further avers that he is unable to read or write, and was not familiar with the descriptions of land, and that when he made his agreement for the purchase of the last-mentioned description of land, the defendant O. P. Bates went with him upon the property, and pointed it all out to him, and that he then and there agreed with the said O. P. Bates upon the terms and manner of payment, and then went to the house of defendants, who were both familiar with the property, and in the presence of Mrs. Bates, who held the title to the premises, the agreement was all talked over and approved by her; that the three then went before a proper officer, and had the papers draughted; that complainant was not present when his deed was draughted, but believes O. P. Bates gave the officer the description, and

when he returned, the deed was prepared ready for execution, and was read over to him, but he did not understand the wording of the description, and supposing it to be right, he immediately entered into the possession of the premises which he had agreed to purchase, and which had been pointed out to him when he purchased, and has ever since remained in possession of the same; that previous to his making said purchase he had secured an agreement with the owner of the undivided ½ of the S. ½ of S. W. ¼ of N. E. ¼ of section 6, except the four acres and the six acres belonging to Cook, to divide the same so as to give complainant the half adjoining the rest of his land.

Complainant further avers that shortly before filing his bill the defendant O. P. Bates entered upon the land, and claimed to own about six acres thereof on the north-east quarter of section 6, which was included in his purchase of defendants, and thereupon he took his deed to a competent conveyancer, and ascertained that an error had been made in the description contained in his deed; that the four-acre parcel had been left out, and that instead of an undivided half of the south half of the south-west quarter of the north-east quarter of section 6, with the exceptions therein contained, only an undivided quarter of the same was contained in the deed; and complainant avers that such error is a fraud upon his rights, and was so purposely intended by defendants, and prays defendants may be decreed to convey to complainant the land he so purchased of them, and not contained in his said deed.

The defendants made their joint answer, in which they admit that Ellen M. Bates owned the four acres of land mentioned in the bill, and that the same is forty rods east and west, and sixteen rods north and south, and that O. P. Bates was the owner of the undivided one-half of land claimed to have been purchased by complainant, lying on the north-east quarter of section 6. They deny that they ever contracted or agreed to sell to the complainant the land he claims was omitted in their deed to him, and aver the deed contains all the land sold to complainant. They deny that, while looking

over the premises with complainant, defendant O. P. Bates particularly pointed out the said four acres of land to him, and that they, or either of them, ever intended to convey the same to complainant. They deny that O. P. Bates agreed to pay the two notes of complainant held by his father's estate, but say that complainant transferred his interest in personal property in said estate to Ellen M. Bates, except said two notes; and deny the conversation at the house in the presence of defendant Ellen M. Bates, when complainant says she consented and agreed to the contract made by her husband.

Defendants admit that the parties went to Coldwater to make the papers on the sale; but deny any effort was made to defraud complainant; that the complainant and his brother dictated about making out the papers, and that the land was described as they directed, and that after the papers were made out time was taken to deliberate, examine and determine what to do, and after several days had elapsed the exchange of papers was, on the part of complainant, voluntarily made.

The defendants also deny that complainant entered into the possession of any premises not conveyed by the deed to him; and aver that they lay claim to no lands owned by him; that if complainant did not get as much land as he supposed he was getting, or intended to get, it was the result of his own negligence or folly; that it was through no mistake or fraud of the defendants.

The case was heard on pleadings and proofs at the Branch circuit. The court dismissed the complainant's bill, and he now brings this appeal.

After a careful examination of the record, I think the testimony shows conclusively that complainant understood, when he contracted to exchange properties with the defendant, that included in the land he was to receive from them was the four-acre piece and an undivided one-half of the mill lot. The only question further to be considered is, did the defendants so understand the bargain or did they in their treaty with the complainant so represent the matter and con-

duct themselves that he, exercising ordinary reason and judgment, had a right to so construe their acts and conversation as he understood them? If so, then, in either case, he, having given the full consideration for what was by the contract sold to him, has the right to have a proper conveyance therefor of the defendants. I see no difficulty about the description of the parcels complainant claims to have purchased. Arwin and Orsemus were brothers. The whole property had been in the family for years, and while the fractional parts into which the property was divided in making the exchange was somewhat difficult to keep in mind or trace by one unaccustomed to running out parcels and describing lands, still what is mentioned as the mill lot and four-acre piece, about which this contention is now had, was well known to all of the parties.

The complainant was an unlettered man, could neither write nor read writing, and it is not very probable he could follow closely the description of the fractions he contracted for when the deed was read over to him by the draughtsman; but when the land was pointed out he would recognize as quick as any one the extent thereof and the lines fixing its boundaries. The complainant presents this testimony to prove that he was to have what he claims in his bill: (1) That he purchased what the defendants had east of the highway extending to the river. (2) That he went upon the premises with Orsemus when he made his contract, and the latter pointed out about where the north line of the undivided half of the mill lot would come, and the west end thereof he located near a clump of peach trees. (3) That the property he gave in exchange for what the defendants let him have would at a reasonable price fully pay for what he claims to have purchased of defendants. (4) That the property which Orsemus received of the complainant was worth over $2700, and that which he claims to have given in exchange for it about $2000; that the deed given by defendants conveys a part of the four-acre parcel to complainant. (5) That immediately after his purchase he took possession of all he claimed to have purchased, and pastured and cropped or cultivated for cropping

the whole amount to which he claims to be entitled, and supposed the deed he received covered the whole tract. (6) That the four-acre parcel must be included to make the forty acres mentioned in the deed given.

This testimony appears, not only from that of the complainant himself, but from the evidence given by eight other witnesses. The defendants were both sworn in their own behalf, as was Mr. Legg, the draughtsman of the papers, and several other witnesses. The defendants, in their testimony, contradict many of the statements of the complainant; and if the case stood upon the pleadings, and the testimony of the parties alone, I do not think the bill could be sustained; but the other testimony in the case, wherein the parties are in conflict, I think is quite sufficient to determine the questions involved.

The testimony of the draughtsman is of no particular importance one way or the other; his recollection is too indistinct and indefinite to be of any consequence. He is unable to say from whom or from what source he obtained the description contained in the deed. He says : " I drew the deed from Orsemus to Arwin. I can't say at whose request I drew it. There were one or two other deeds drawn by me at the same time. There was a good deal of talk between the parties. I don't recollect who requested me to draw the papers. I can't tell you how I got the description. I know I had a county map, the township map of Ovid, before me. I know both parties, Arwin and Orsemus Bates, were present and talked about the description. I remember that Arwin sat at the south end of my table, and Seymour [meaning O. P. Bates] sat at the other end, when this description on the east side of the road was being ascertained. Whether the description was written into the deed at that time or later I can't say. I have no recollection. Whether there was any talk about deeding one-half instead of one-fourth of the mill lot, I can't say there was or was not. I drew the description, and it was a deduction from their negotiations. I think I made some suggestions myself from the map—how it should be. What was said about the quantity or interest I have no

recollection." The defendant Mrs. Bates testified Orsemus "was to let him (Arwin) have the forty acres where he lived and a share of the mill land. I think it was one-half of the undivided half."

It appears, from the testimony of all the witnesses who speak upon the subject, that the forty acres where Orsemus lived would include the four-acre parcel. The testimony of defendant O. P. Bates does not give the contract or agreement with the complainant. He undertakes to state what he owned and what he did not own at the time he made the deed to complainant, and many important things stated by Arwin he fails to deny or explain. On the whole, his testimony is of a most unsatisfactory character.

But, in the view I take of the case, it is not necessary to pursue the testimony further or in detail. It is true that a clear case must be made, when a mistake is alleged of the kind stated in the bill of complaint, before a court of equity will interfere to grant relief. After a careful perusal of all the testimony, and viewing the transaction between the parties in the light of surrounding circumstances, I am clearly of opinion that the defendants did, for the consideration they received of the complainant, agree to convey to him the real estate mentioned in the bill as claimed by said complainant, and that in equity and good conscience they should comply with their agreement.

The complainant is therefore entitled to the relief he prays. The decree at the circuit will therefore be reversed, and a decree entered in this Court in accordance with the prayer of complainant's bill with costs of both courts.

The other Justices concurred.