BLAKE *v.* FULLER.

1. Reformation of Instruments—Deed—Boundary—Evidence.
   In suit to reform deed as to rear boundary of lake front lot, evidence *held*, sufficient to justify decree for plaintiffs, where, among other things plaintiffs had taken possession of and improved land claimed and dispute came after discord had arisen between the parties over other matters.

2. Same—Evidence—Mistake—Fraud.
   Suit for reformation is proper remedy to carry out the express intent of the parties where evidence is clear that both parties had reached an agreement and as a result of mutual mistake or mistake on one side and fraud on the other, the instrument did not express the true intent of the parties.

Appeal from Muskegon; Vanderwerp (John), J. Submitted January 21, 1936. (Docket No. 47, Calendar No. 38,540.) Decided March 2, 1936.

Bill by John A. Blake and wife against Russell B. Fuller and wife to reform a deed and for an injunction. Decree for plaintiffs. Defendants appeal. Affirmed.

*Alexis J. Rogoski,* for plaintiffs.

*Charles B. Cross* (*Wallace Foote* and *C. N. Sessions,* of counsel), for defendants.

BUTZEL, J.   John A. Blake and wife, residents of Chicago, brought suit to reform a deed given them by Russell B. Fuller and wife for lot 19 of block 2 of New Point Comfort subdivision in the township of Fruitland, county of Muskegon, Michigan, as recorded in the office of the register of deeds for that county. The parties conceded that a mistake was made in the description of the block number in the deed and that it should be corrected to read "block 3" instead of "block 2." The dispute, however, involves the question of whether the deed should have included more than merely lot 19.

Defendants at one time owned lot 5 of block 3, moved a cottage thereon and sold it. Subsequently, the property was acquired by plaintiffs who made a large investment in the purchase and subsequent improvement of the premises. Lot 5 is distinguished from the others to the west in the same block in that it extends from the shore of White Lake at its north to Bluff Road at its south. The rest of the land in block 3 west of lot 5, as shown by the plat, is bisected by a 10-foot alley running east and west from the westerly line of lot 5, and about half way between

the lake and the road, thus creating separate lots on each side of the alley. Lots 19 to 22, inclusive, front on the lake and extend to the north side of the alley, while lots 1 to 4, inclusive, front on Bluff road and extend to the south side of the alley. The 10-foot strip appears as a blind alley on the plat and comes to an abrupt end on reaching the westerly line of lot 5. Defendants owned lots 19 and 4, which are immediately west of and abut plaintiffs' lot 5. These two lots appear as one to an observer, the alley never having been physically laid out at this point.

Defendant Fuller had acted as caretaker of many of the summer residences in the subdivision and looked after repairs and maintenance for the owners on a cost plus 10 per cent. basis. After plaintiffs made their large investment in lot 5 and lived there for some time, Fuller told them that their house stood almost on the westerly line of lot 5 and urged them to purchase the adjoining property. Later he told them that he had a prospect of sale and that a purchaser of the adjoining land was apt to build up to their lot line and thus lessen the value and enjoyment of their property. Blake finally agreed to purchase the adjoining property from Fuller and in the negotiations immediately preceding the agreement, Blake testified that he stated that he desired to purchase all of the land from the lake to the road; Fuller stated that he could only sell the property north of a certain iron stake (standing on lot 4), as he wanted to retain the property south of this point for a tennis court which he was dedicating to the public; Fuller held a tape measure at the iron stake while Blake and another assisted in measuring off the distance from the iron stake to a point near the back end of plaintiffs' house on lot 5. The measurements at the time as well as Fuller's subsequent conversation in the presence of others is convincing that the iron

stake stood 13 feet 7 inches south of the northerly line of lot 4, and it was understood and agreed that plaintiffs were purchasing the property north of the stake. Evidently little, if any, attention was paid to the alley inasmuch as it was thought that plaintiffs as purchasers would become the owners of the abutting property both on the north and south sides of the blind alley. Blake in the belief that he was purchasing all of the property north of the stake, which actually included not only lot 19, but also the property south thereof, including the alley and the northerly 13 feet 7 inches of lot 4, paid defendants the sum of $500 and took a receipt for this amount. Later he sent the balance of $850 and defendants then forwarded to him a deed only describing lot 19, and an abstract. Plaintiffs, believing that the deed covered the land that they had bargained for and that defendants had agreed to sell, paid no attention to the description in the deed or the plat. They proceeded to fill in the alley and the northerly 13 feet 7 inches of lot 4, sodded a larger portion of it, decorated it with flower beds, planted a tree almost immediately next to the iron stake and extended a grape arbor onto the property in dispute. Several years later, discord and litigation arose between the parties when Blake accused Fuller of padding bills for work and labor on plaintiffs' premises and of overcharging for services, and lawsuits followed. The instant suit was brought after Fuller erected posts and a barbed wire fence along the alley, including that portion almost immediately adjoining the kitchen door of plaintiffs' home so as to almost cut off its use. Plaintiffs claim that they purchased all of the property north of the iron stake, and that the description of the parcel was omitted from the deed and not noticed through a mistake on their part and the fraud or mistake of defendants. Defendants deny that there was

any understanding that plaintiffs were to get any more than lot 19.

There is absolutely no merit whatever to defendants' claim that the understanding between plaintiffs and defendants upon which the decree is based was not satisfactorily proven. Blake and four corroborating witnesses proved plaintiffs' claims by an overwhelming preponderance of evidence. Defendants further claim that, as a matter of law, a deed cannot be reformed where the mistake was not mutual and that if fraud had been practiced, plaintiffs could only rescind, not demand reformation. In the recent case of *Ross* v. *Damm*, 271 Mich. 474, we again held reformation proper so as to carry out the express actual intent of the parties where the evidence is clear that both parties had reached an agreement and, as a result of mutual mistake or mistake on one side and fraud on the other, the instrument did not express the true intent of the parties. There must be clear evidence of such mutual mistake or of mistake on one side and knowledge of the mistake plus concealment thereof on the other. *Retan* v. *Clark*, 220 Mich. 493, and *Crane* v. *Smith*, 243 Mich. 447. There was such in the instant case.

The chancellor upheld plaintiffs' claim that the deed should have included the northerly "13.7 feet" of lot 4 of block 3. He also enjoined defendants from interfering with plaintiff's use and enjoyment of the streets and alleys designated in the plat of the subdivision. The decree of the lower court is affirmed except that instead of "13.7 feet," the inadvertent error of the chancellor should be corrected by having the decree read "13 feet 7 inches." Costs are awarded to the plaintiffs.

North, C. J., and Fead, Wiest, Bushnell, Edward M. Sharpe, Potter, and Toy, JJ., concurred.