COYNE et al. v. SIMRALL CORPORATION
et al.

No. 9596.

Circuit Court of Appeals, Sixth Circuit.

Feb. 10, 1944.

Karl H. Hogan, of Saginaw, Mich., Virgil W. McClintic, of Mount Pleasant, Mich., and Devere Kostoff, of Saginaw, Mich., for appellants.

R. Lee Browning, of Mt. Pleasant, Mich., and William E. Knorr, of Alma, Mich. (R. Lee Browning, of Mount Pleasant, Mich., William E. Knorr, of Alma, Mich., and Donald E. Holbrook, of Clare, Mich., on the brief), for appellee.

Before HAMILTON, MARTIN, and McALLISTER, Circuit Judges.

McALLISTER, Circuit Judge.

The Simrall Corporation filed its complaint against friendly and hostile defendants, asking that the court adjudge a certain provision in an oil lease to be invalid, and for an injunction, accounting, and appointment of a trustee. The district court held that the provision in question, relating to apportionment of royalties under a pro rata, pool arrangement, did not control the rights of subsequent grantees, whose deeds recited that they were subject to the lease; and on amended pleadings, asking reformation, the court removed the restrictions of the pool provision from the deeds in question.

The circumstances leading up to the controversy are as follows: Flora Coyne, a widow, was the owner of a tract of approximately 345 acres of farm land in Clare County, Michigan, where she had formerly made her home. The land was poor and worn out, and all of the buildings erected upon the place, had been torn down. At the time when the incidents giving rise to this suit occurred, a small part of the land was used for grazing. On May 3, 1937, Mrs. Coyne executed and delivered an oil lease to the Carter Oil Company of Tulsa, Oklahoma, in which it was agreed that she would receive, as royalty, one-eighth of the value of any oil produced from the premises.

In the lease, which was prepared by the Carter Oil Company, there was inserted a provision, which resulted in this suit, in form as follows: "It is covenanted and agreed that should the fee of said land be divided into separate parcels, held by different owners, or should the rental or royalty interests hereunder be so divided in ownership, after the execution of this lease, the obligations of the lessee hereunder shall not be added to or changed in any manner whatsoever as specifically provided by the terms of this lease. Notwithstanding such separate ownership, lessee may continue to drill and operate said premises as an entirety. Provided, each separate owner shall receive such proportion of all rentals and royalties accruing after the vesting of his title as the acreage of the fee, or rental or royalty interest, bears to the entire acreage covered by the lease, or to the entire rental and royalty interest as the case may be. * * *"

Although relying upon it at the present time, Mrs. Coyne, who is one of the appellants herein, never saw this pooling, or pro rata, provision at the time the lease was made, nor for two and a half years thereafter, and knew nothing about it during that time. It was first called to her attention by the Simrall Corporation. Apparently, Mrs. Coyne was interested only in the stipulation as to the one-eighth royalty interest. The lessee, Carter Oil Company, however, had caused the lease to be recorded, and successors to its interest thereunder, drilled and completed producing wells in part of certain sections, while the rest of the land, which was not promising, remained undeveloped. The Simrall Corporation is the purchaser of the oil produced from the Coyne farm and has previously paid the royalties therefor in accordance with what it understood was the agreement between Mrs. Coyne, the original owner of the land, the Carter Oil Com-

pany, the lessee under the oil lease, and Mrs. Coyne's grantees.

The grantees of Mrs. Coyne had, subsequent to the execution of the oil lease, received from her "royalty deeds," or deeds conveying to them a certain interest in the oil rights in the land, subject to the lease. Deeds of mesne grantees contained the same provision. Such grantees thought that they were receiving royalty rights to oil from the land specified in the deeds, and Mrs. Coyne thought the same. But the deeds from her stated that the land mentioned therein was under oil lease to the Carter Oil Company and subject to its terms; and the lease provided that royalties would be paid, not to the owner of the interest in a parcel described in a deed, for oil taken therefrom, but that each owner of any part of royalty rights in the entire tract, would receive royalties for oil produced from any part of the entire acreage of the Coyne farm, in such proportion as the acreage mentioned in the royalty deed bore to the acreage of the whole tract.

While an examination of the lease would have disclosed the pool agreement, neither the Simrall Corporation nor any of the numerous grantees under deeds of Mrs. Coyne, made such an examination; and although their deeds recited that they were subject to the terms of the lease, the grantees and the corporation were ignorant of the pro rata provision, and understood and assumed that the lease was the type of oil lease ordinarily used in Michigan, which merely discloses the right of owners of interests in parcels described, to a percentage of amounts realized out of the oil produced therefrom.

Acting on this assumption, the Simrall Corporation made payments of royalties from time to time to Mrs. Coyne and to the various grantees of mineral rights, apportioning such royalties among them as their shares appeared under the deeds, without reference to the stipulation in the oil lease relating to the pro rata payment of royalties from the entire tract.

Payments of royalties were made by the Simrall Corporation to Mrs. Coyne and to the above-mentioned grantees in accordance with division orders. Mrs Coyne, in the division order signed by her, advised the corporation of the proportion of royalties to which she was entitled, based on her understanding that her interest therein depended upon her rights in the parcels from which the oil was produced, rather

than upon the pro rata provision set forth in the oil lease. The other grantees were paid in like manner. Thereafter, in October, 1939, the Simrall Corporation discovered that the original oil lease contained the pro rata provision, and some time during the following month, informed Mrs. Coyne of this circumstance. She was told by counsel for the corporation that, according to such provision, she was being greatly underpaid, and the provision was read over to her. Whereupon, she informed counsel that the pro rata provision was not fair; that she wanted to be fair and, accordingly, wished to have the royalties paid in the future as in the past, remarking: "Those people paid their money they should receive their money. * * * Can you draw up something for me to sign?" At this time, she expressed her willingness to sign anything that might be prepared to effect payment of royalties to owners of interests in parcels described in the deeds, for oil produced therefrom. An agreement was thereupon drafted, to carry out her disclosed intentions and to be signed by her. and the other interested parties. She actually signed the agreement but retained it in her possession and did not deliver it. The corporation did not cease the payment of royalties, but continued them on the former basis for some months—until it was informed that Mrs. Coyne had changed her mind and had demanded payment of back royalties in accordance with the pro rata provision in the oil lease. This demand led to the filing of the present suit by the corporation.

Apart from the Simrall Corporation, appellees are mostly grantees of Mrs. Coyne, who asked reformation of the deeds from her in order to remove the pro rata lease provision to which they are subject, by virtue of the recital in the deeds that the deeds are subject to the lease. Appellants include Mrs. Coyne and certain of her grantees, who oppose reformation and insist on continuation of the pro rata provision because their deeds recite that they are subject to the lease, which includes the provision in question.

In seeking to enforce payment of royalties upon the pro rata basis, rather than to owners of rights in the specific parcels from which the oil was produced, appellants contend that reformation of the deeds in question, on the ground of mutual mistake, was error. They insist that both the

grantor and the grantees in such deeds were conscious of the existence of the oil lease to which the deeds were subject; and although they might have been ignorant of the specific lease provision, nevertheless, the parties intended that the deeds were to be subject thereto and, therefore, there was no mutual mistake to justify reformation. In making this contention, appellants rely upon the authority of Harley v. Magnolia Petroleum Co. et al., 378 Ill. 19, 37 N.E.2d 760, 766, 137 A.L.R. 900.

In the above-mentioned case, the facts were similar to those here disclosed, in the following particulars: There was an oil lease similar in its pro rata provision to the one here in controversy. Deeds to oil rights, subject to the lease, were issued to two grantees. Both grantor and grantees were ignorant of the pro rata provision— except as may be hereafter noted. Upon discovery of its existence, the grantor asked for an accounting under the pro rata provision; and the grantees, in counterclaims, asked reformation of the deeds, to limit payment of the royalties to the owners of interests in the parcels from which the oil was produced. In an opinion, reversing the trial court, the Supreme Court of Illinois denied reformation on the ground that, although the parties testified that they were ignorant of the terms of the lease, "yet the intention of the parties to the deeds was that they were to be subject to the lease"; and it was held that there was no such showing of mutual mistake as would justify reformation of the deeds.

Much is said in the above-mentioned opinion, with regard to the granting of reformation where parties have contracted in ignorance of facts, and denial thereof in case of conscious want of knowledge, all of which appellants urge in support of their argument. The case may be distinguished, however, from that before us. In the cited case, one of the grantees, who claimed to be ignorant of the pro rata provision in the lease, had referred the lease for examination to his counsel, who had examined it before the grantee's acceptance of the deed; and the court remarked that such grantee could scarcely be said to have had no notice of the pro rata provision. The other grantee in the cited case was told of the pro rata provision in the lease shortly after he received his deed, and before any oil was discovered, and admitted

that he then deemed it of no importance. Even though it were conceded that such grantees were ignorant of the lease terms, there appears no evidence that they actually intended something other than that disclosed in the deeds.

In discussing the legal principles applicable to the cited case, it was said that reformation would be granted on the ground of mutual mistake where the mistake was one of fact, and where the proof clearly and convincingly shows that a mistake was made and that it was mutual and common to both parties. Moreover, it was observed that there is a presumption that a written agreement expresses the mutual intention of the parties, unless the evidence of mistake is of a strong, convincing character; and that the right to reformation requires proof that both parties understood alike the agreement that they made, but failed to express their common understanding and intention in the written instrument. The court said: "An action to reform a written agreement rests upon a theory that the parties came to an understanding, but in reducing it to writing, through mutual mistake, * * * some provision agreed upon was omitted, and the action is to so change the instrument as written as to conform it to the contract agreed upon, by inserting the provisions omitted or striking out the one inserted by mutual mistake. Equity cannot make a new agreement for the parties under the color of reforming the one made by them, or add a provision which they never agreed upon. Where a writing expresses an actual agreement it cannot be reformed by inserting provisions not agreed upon. * * * In Farmers' Loan & Trust Co. v. Suydam, 69 Neb. 407, 95 N.W. 867, 868, ignorance of facts was held not to be ground for reformation but for rescission. The court there observed: 'The difficulty in decreeing a reformation in this case consists in the fact that the minds of the parties do not seem to have ever met upon the contract in the form in which it is sought to be put.' That observation is pointedly applicable to the facts in this case. It can scarcely be said that the deeds were made with intention to make them other than subject to the lease." 37 N.E.2d 765.

The real distinction between the Harley case and the case before us, is found in the statement from the above opinion, that the evidence did not indicate that the intention to make the deeds *"other than sub-*

*ject to the lease* was mutual." "In fact, *no evidence of such an intention* at the time of the making of the deeds appears on the part of either party thereto. * * * We are of the opinion that the *evidence* * * * *does not show, with required clarity,* such mutual mistake as would justify reformation of the deeds." 37 N.E.2d pages 765, 766. (Italics supplied.)

In the present case, the district court held that the parties—the grantor and the grantees—mutually intended that the deeds should convey rights to royalties from oil produced from the parcels mentioned in the deed, and that deeds conveying royalty rights on the pro rata basis were contrary to the common intention and understanding of the parties. The Harley case was decided on the ground that, while the parties did not know what the terms of the lease were, there was no evidence to show that they intended to agree to anything other than that the deeds would be subject to the lease. Here, it appears that, while the parties did not know what the terms of the lease were, the evidence clearly disclosed that they mutually intended and contracted on the common understanding that royalties would be paid only to the owners of interests in the parcels from which oil was produced.

It is unnecessary to discuss the testimony at length. The evidence shows that the grantor and grantees contracted on the mutual understanding that, in the conveyances of mineral rights, they were dealing with royalties from the specific acreage mentioned therein, and that no grantee had any interest in royalties from the lands described in the deeds of other grantees. Prices for the oil rights were calculated by Mrs. Coyne, depending upon the location of the parcels described in the deeds. The situation of the acreage mentioned therein, was a controlling factor in the sales, from the standpoint of both the grantor and the grantees, who paid their money, which was accepted by Mrs. Coyne, on the above-mentioned understanding. Division orders, based on ownership of rights in specific parcels, were filed by the grantor and the grantees, advising the Simrall Corporation of their respective shares of royalties, and payment of such shares were repeatedly made in accordance therewith. None of the parties knew of the pro rata provision in the lease, and none of them had ever heard of such a provision in an oil lease. When the stipulation for allotment of royalties to all owners in the tract, on a basis of proportionate acreage therein, was first discovered, Mrs. Coyne stated that such provision was not fair, and should be corrected, although she was advised that such a correction would result in less royalty income to her and her children and brothers.

All parties understood alike the agreement that they made—which was not expressed in the deeds. Subjecting the deeds to a pro rata royalty provision in the lease, was a mistake on the part of both grantor and grantees. They never intended to do this; but, as it affirmatively appeared, they intended to do something entirely different. The evidence showed what they intended, and revealed the agreement on which their minds met, and such evidence amply sustained the findings of the trial court. Reformation may be granted to carry out a contract in accordance with the mutual intention of the parties, which was inadvertently disfigured by a mistake in the written instruments. Scott v. Grow, 301 Mich. 226, 3 N.W.2d 254, 141 A.L.R. 819; Conlin v. Masecar, 80 Mich. 139, 45 N.W. 67; Damm v. Moon, 48 Mich. 510, 12 N.W. 679. Where there is mistake on one side, and knowledge of the mistake plus concealment, on the other, reformation will be decreed. Blake v. Fuller, 274 Mich. 534, 265 N.W. 455; Ross v. Damm, 271 Mich. 474, 260 N.W. 750; Retan v. Clark, 220 Mich. 493, 190 N.W. 244; and when one party has a certain understanding of the agreement, and the other so represents the matter, and conducts himself, that the first party, exercising ordinary reason and judgment, construes such acts or conversations as representing the agreement, reformation of a written instrument is granted to carry out such understanding. Bates v. Bates, 56 Mich. 405, 23 N.W. 63. Under the circumstances of this case, reformation is the proper remedy to effectuate the mutual intention of Mrs. Coyne and her grantees.

With one exception, appellants, other than Mrs. Coyne, are her children and her brothers. The trial court found that they paid no consideration for their deeds, and there is substantial evidence to sustain the finding. A subsequent grantee of one of the children paid for royalty interests in the specific acreage named in the deeds. Under the foregoing circumstances, any claims of appellants, based upon the provisions of the oil lease, must yield to the

rights of bona fide purchasers for value, who contracted on the mutual understanding with their grantor, that the royalties were to be paid to owners of rights in specific parcels described in the deeds, from oil produced from such parcels.

While the original lessee is not a party to this suit, the Simrall Corporation is the purchaser of oil under the lease provisions and pays the royalties in accordance with the amount therein agreed to. No rights of the lessee, its successors, or of the Simrall Corporation, are in any way affected by a determination of the proper recipients of the royalties. The amount to be paid is the same, whether the royalty interests are owned by one party or by several. The oil lease did not, in any way, affect Mrs. Coyne's right to sell royalty shares in the land under lease, in whatever manner she desired; and, under the circumstances of this case, the Carter Oil Company, or its successors under the lease, had no interest in any transactions between Mrs. Coyne and her grantees, unless it was one of convenience in the method of payment of the royalties. No rights of bona fide purchasers for value without notice, have intervened, subsequent to the agreements between Mrs. Coyne and her grantees, which would defeat reformation and payment of royalties in accordance with their intention and understanding. Royalties impounded prior to this suit, are payable in accordance with the deeds reformed by the trial court.

The judgment of the district court is affirmed.