**John HAND, Plaintiff-Appellant,**

v.

**DAYTON–HUDSON, a foreign corporation, Defendant-Appellee.**

**No. 84–1775.**

United States Court of Appeals,
Sixth Circuit.

Argued Aug. 20, 1985.
Decided Oct. 28, 1985.

Dennis P. Brescoll, argued, Brescoll & Associates, P.C., Mount Clemens, Mich., for plaintiff-appellant.

James P. Feeney, argued, Detroit, Mich., for defendant-appellee.

Before LIVELY, Chief Judge, and CONTIE and WELLFORD, Circuit Judges.

CONTIE, Circuit Judge.

Plaintiff John Hand appeals from the entry of summary judgment by the district court in favor of defendant Dayton-Hudson Corporation in a diversity action alleging breach of an employment contract and age discrimination. The district court found that Hand had fraudulently altered a release which both parties subsequently signed. The court reformed the release to conform to its original meaning. For the reasons set forth below, we affirm.

## I.

The historical facts are undisputed. Appellant Hand is an attorney and had been employed by appellee Dayton-Hudson Corporation from 1967 to 1982. In February of 1982, appellant lost his job with Dayton-Hudson allegedly as a result of a major restructuring by Dayton-Hudson.

Upon firing Hand, Dayton-Hudson made an offer to pay him $38,000 if Hand agreed to release Dayton-Hudson of any claims he might have against it. Hand refused this offer, asserting that he was already entitled to this sum under his employment contract. A release was nonetheless drafted according to the terms originally offered by Dayton-Hudson, and was given to Hand for consideration. He was told he must accept or reject Dayton-Hudson's offer by March 20, 1982. Hand informed Dayton-Hudson on March 19th that he was prepared to sign a release. That same day, Hand met with Dayton-Hudson's agent Harms and the parties signed the document Hand brought with him.

Prior to the signing, Hand had prepared another release which provided that he was releasing all claims "except as to claims of age discrimination and breach of contract." Except for the changes made by Hand to limit the terms of the release, Hand's re-

lease was identical to the original prepared by Dayton-Hudson. The typewriter on which it was written was of the same type and model; the number and structure of paragraphs were identical; all other language and punctuation was identical; and the headings were also identical. In addition, when Hand presented this release to Mr. Harms, a Dayton-Hudson official, Hand attached the outline of termination benefits to this release in the same manner that it had been attached to the original release. Despite the changes made, the documents appeared superficially identical.

On December 7, 1983, Hand filed a complaint in district court alleging age discrimination and breach of contract claims against Dayton-Hudson. Dayton-Hudson answered that Hand had fraudulently procured its agent's signature on the modified release and requested reformation of the release to conform to the original offer made by Dayton-Hudson. Dayton-Hudson moved for summary judgment. After a hearing, the court granted summary judgment on the issue of fraud, reformed the release, and held that summary judgment was appropriate since Hand's claims were precluded by the reformed release.

## II.

Upon review of a district court's grant of summary judgment, this court must determine whether there was any genuine issue of material fact when the evidence is viewed in the light most favorable to the party opposing the motion. *Glenway Industries, Inc. v. Wheelabrator-Frye, Inc.,* 686 F.2d 415, 417 (6th Cir.1982); *Watkins v. Northwestern Ohio Tractor Pullers Ass'n, Inc.,* 630 F.2d 1155, 1158 (6th Cir. 1980). This standard on review is the same test as is used by district courts in granting the motion. *Glenway Industries,* 686 F.2d at 417. Appellant Hand asserts that the district court erred in finding on a summary judgment motion that Hand had committed fraud. Hand also asserts that summary judgment was inappropriate because reformation is not a proper remedy when

there is not a mutual mistake of fact, even in the presence of fraud.

### A.

■ Under Michigan law, the following elements are generally required to show fraud: (1) a material misrepresentation; (2) which was false; (3) which the defendant either knew was false or which defendant made with reckless disregard for the truth; (4) which was made with the intention that the plaintiff would act upon it; (5) which the plaintiff in fact relied upon; and (6) which caused the plaintiff injury. *See United States Fidelity & Guaranty Co. v. Black,* 412 Mich. 99, 114, 313 N.W.2d 77 (1981). There need not be an affirmative misrepresentation to constitute fraud, but fraud, "may be consummated by suppression of facts and of the truth, as well as by open false assertions," if there is a "legal or equitable duty of disclosure." *Id.* at 125, 313 N.W.2d 77. There is an equitable duty of disclosure in a business transaction when "circumstances surrounding a particular transaction are such as to require the giving of information...." *Ainscough v. O'Shaughnessey,* 346 Mich. 307, 316, 78 N.W.2d 209 (1956). *See also Black,* 412 Mich. 99, 124–28, 313 N.W.2d 77 (1981); *Sullivan v. Ulrich,* 326 Mich. 218, 228, 40 N.W.2d 126 (1949).

■ The district court noted that Hand, in his affidavit, had stated he "prepared the release knowingly and deliberately" and that he intended to "turn the tables" on Dayton-Hudson. The court concluded that the undisputed fact that Hand prepared the release and presented it to Dayton-Hudson's agent constituted intentional fraud. Under the facts of this case, and Michigan law, we unanimously affirm the lower court's finding of fraud on the summary judgment motion. There was but one conclusion that can be drawn from this evidence: Hand committed fraud by not informing Dayton-Hudson of the changes he made in the release.

■ The defendant was excused from not having read the new document because the general rule of being held responsible

for contracts one signs, even if one has not read them, "is not applicable when the neglect to read is not due to carelessness alone, but was induced by some stratagem, trick, or artifice on the part of the one seeking to enforce the contract." *Komraus Plumbing & Heating, Inc. v. Cadillac Sands Motel, Inc.*, 387 Mich. 285, 290, 195 N.W.2d 865 (1972) (citing *International Transportation Ass'n v. Bylenga*, 254 Mich. 236, 239, 236 N.W. 771 (1931)). Hand carefully retyped the release in such a way that Dayton-Hudson's agent Harms would never expect that changes were made. The failure to read most definitely resulted from Hands' clever scheme, and, accordingly, does not bar Dayton-Hudson from challenging the validity of the fraudulent release.

■ Further, Hand's assertion that he was entitled to the benefits offered him under his employment contract does not raise a *material* issue of fact, even though the district court found this to be a *genuine* issue of fact. Although in many contract situations this issue of fact would go to the heart of the controversy, and thus be material, this is not the case when fraud is involved. As will be discussed below, when one party fraudulently alters a contract and induces the other party to sign it, the contract can be reformed to reflect the defrauded party's understanding. The party who committed fraud may have understood his rights to be more accurately reflected in the pre-reformation writing, but since he committed fraud, his understanding is no longer significant and reformation is proper. Therefore, though Hand is correct in asserting that there is a genuine issue of fact, it is immaterial in light of the fraudulent scheme that he carried out.

### B.

Appellant Hand further contends that reformation is not a proper remedy in this case. Under Michigan law, reformation generally requires a mutual mistake of fact. *DeGood v. Gillard*, 251 Mich. 85, 87, 231 N.W. 102 (1930). To grant reformation when there is merely a unilateral mistake would be harming one party while benefiting another without regard to what the parties actually intended. *DeGood*, 251 Mich. at 88, 231 N.W. 102. This would be equivalent to drafting a new contract between the parties which courts are reluctant to do. *E.R. Brenner Co. v. Brooker Engineering Co.*, 301 Mich. 719, 723, 4 N.W.2d 71 (1942). However, there is an exception to the requirement for mutual mistake under Michigan law. "Where there is mistake on one side and fraud or inequitable conduct on the other reformation may be decreed." *DeGood*, 251 Mich. at 88, 231 N.W.2d 102. *See also Stein v. Continental Casualty Co.*, 110 Mich.App. 410, 418, 313 N.W.2d 299 (1981); *Schwaderer v. Huron-Clinton Metropolitan Auth.*, 329 Mich. 258, 267–68, 45 N.W.2d 279 (1951); *Blake v. Fuller*, 274 Mich. 534, 265 N.W. 455 (1936); *Holbeck v. Williamson*, 255 Mich. 430, 432, 238 N.W. 269 (1931); *Retan v. Clark*, 220 Mich. 493, 496, 190 N.W. 244 (1922).

To use this exception, the finding that one person knew the writing did not reflect the other party's intent must be supported by clear and convincing evidence. *Woolner v. Layne*, 384 Mich. 316, 318, 181 N.W.2d 907 (1970); *Retan v. Clark*, 220 Mich. 493, 494, 190 N.W. 244 (1922). This exception is consistent with the Restatement (Second) of Contracts § 166 which provides that if a party's "assent is induced by the other party's fraudulent misrepresentation as to the contents or effect of a writing ... the court ... may reform the writing to express the terms of the agreement as asserted...." [1]

1. Although the Michigan courts have never relied on this provision of the Second Restatement, the Michigan Supreme Court has cited to a parallel provision in the First Restatement of Contracts, § 505. *Woolner v. Layne*, 384 Mich. 316, 318–19, 181 N.W.2d 907 (1970). Section 505 of the First Restatement reads "if one party at the time of the execution of a written instrument knows not only that the writing does not accurately express the intention of the other party as to the terms to be embodied therein, but knows what that intention is, the latter can have the writing reformed so that it will express that intention." The Michigan Supreme Court

The appellant asserts that this exception can only be invoked when there has been a meeting of the minds regarding the terms of the release; and since appellant never intended to release his asserted claims against Dayton-Hudson, he argues there was no meeting of the minds. This interpretation of the law is too narrow. Although some Michigan cases involve "meeting of the minds" fact patterns, *see Schwaderer*, 329 Mich. 258, 45 N.W.2d 279 (1951) and *Bates v. Bates*, 56 Mich. 405, 23 N.W. 63 (1885), other cases suggest that the exception to the mutual mistake requirement is designed primarily to combat the inequities which naturally result from the fraudulent inducement of an innocent party to sign a contract the guilty party knew did not reflect the other party's intent.

In *Holbeck v. Williamson*, 255 Mich. 430, 238 N.W. 269 (1931), neither an option to purchase land nor a subsequent warranty deed contained a provision relating to the payment of taxes. Both parties understood that the plaintiff thought the defendant would pay all required taxes, but the defendant claimed to have expressly promised only "to pay 'the 1928 land tax,' ... intentionally couch[ing] his promise in such words to exclude the highway taxes." *Holbeck*, 255 Mich. at 432, 238 N.W. 269. The defendant was aware of a highway tax assessment, but the plaintiff was not. The court held that "[t]he manner in which defendant made the offer to pay taxes and his conscious failure to mention the highway charges justified the court's finding that he knew of [plaintiff's] mistake of fact and he intentionally deceived [plaintiff] into the belief that he would pay all the taxes." 255 Mich. at 432, 238 N.W. 269. The court emphasized that the defendant was quite aware of the plaintiff's understanding and

intentionally tried to mislead the plaintiff into believing he was in agreement with the plaintiff. Although the defendant in the *Holbeck* case never personally intended to agree to pay the highway taxes, his awareness of the plaintiff's understanding prevented him from ever claiming there was no "meeting of the minds."

■ Hand's conduct falls squarely within the exception established by the Michigan case law. Hand was aware of Dayton-Hudson's position and he intentionally modeled a new release after its offer. His obvious goal was for Dayton-Hudson to believe that it was signing the original document it had given Hand—that Hand was accepting Dayton-Hudson's offer rather than accepting a counteroffer. Therefore, since there was a mistake by Dayton-Hudson which was induced by Hand's fraud, the district court correctly applied Michigan law by reforming the release to conform to the defrauded party's understanding.[2]

Accordingly, the judgment of the district court is AFFIRMED.

WELLFORD, Circuit Judge, concurring:

I fully concur in the rationale expressed by Judge Contie in Part I and Part II–A of this case that Dayton-Hudson, because of Hand's deliberate misrepresentation, is not precluded from challenging the validity of the release, and further, that it would not be precluded from setting the release aside and recouping the $38,000 it paid over to Hand on false pretenses and/or concealment of a material fact. The difficulty with Part II–B of the opinion is my reservation and uncertainty that Michigan law permits a reformation binding Hand to Dayton-Hudson's version of the termination arrangement particularly since Hand con-

---

did not grant reformation in the *Woolner* case because there was a lack of proof, not because it disagreed with the Restatement's standard.

**2.** Although there are Michigan cases that focus on the presence of an "inequitable" situation or unjust enrichment to justify the use of this exception, *see, e.g., Schwaderer*, 329 Mich. 258, 267–68, 45 N.W.2d 279 (1951) and *Retan*, 220

Mich. 493, 190 N.W. 244 (1922), we do not interpret Michigan law to require such a finding, nor do we find a legal distinction between those cases and this case. Though parties may at one time have certain rights and obligations, these can always be bargained away through contract negotiations as in the pending case.

tends that his pre-existing rights would entitle him to as much as $38,000 in the event of his discharge.[1] I refrain from dissent, however, because Hand's unconscionable conduct as an attorney upon whom Dayton-Hudson had a reasonable right to rely as a former client should not be the basis to give him a "second bite at the apple," and to relitigate his age discrimination claim.

Under the circumstances, since Hand has never offered to return the $38,000 improperly obtained by him in the event reformation were to come about (as ordered by the district court), I am satisfied that justice is served by the affirmance of the judgment. I therefore concur in the result reached.

1. The contention is vigorously disputed by Dayton-Hudson but no determinative finding on this question has been made.