**TEAGUE BROTHERS, INC., Appellee,**

v.

**MARTIN & BAYLEY, INC., Appellant.**

Court of Appeals of Tennessee,
Western Section at Jackson.

Nov. 6, 1987.

Permission to Appeal Denied by
Supreme Court Jan. 25, 1988.

James L. Van Winkle, McLeansboro, Ill., John R. Moss, Jackson, for appellant.

Sidney W. Spragins, Jackson, for appellee.

HIGHERS, Judge.

This is an appeal from the Chancery Court at Madison County in a breach of contract action. The trial court, sitting without a jury, granted judgment for plaintiff and awarded damages in the amount of $177,752.27 plus prejudgment interest.

On or about June 15, 1981, plaintiff, Teague Brothers, Inc., and defendant, Martin & Bayley, Inc., entered into a contract for the sale to defendant by plaintiff of all fixtures, equipment, furniture (collectively referred to as equipment), and inventory at four convenience stores in Jackson, Henderson, Selmer, and Savannah, Tennessee. The purchase price for the equipment at each store was $45,000. The inventory was to be purchased at cost or at a percentage of retail.

The pertinent provisions of this sales agreement are:

"5. Seller and Buyer agree that transfer of the property described in Paragraph 1 shall be conducted in compliance with the Tennessee Bulk Sales Act.

Seller agrees to supply Buyer with a verified list of creditors for each of the two stores. The verified list of creditors shall contain the name, full address, Zip code and amount due each creditor. In addition, Seller shall identify each creditor as having a liquidated, disputed or contingent claim, and a secured or unsecured claim.

Buyers payment for inventory shall be used by Sellers to pay and satisfy all creditors shown on such list; and should any creditor make claim against Buyers for any sum of money due it because of failure to comply with the Bulk Sales Law, Buyer may deduct any amounts necessary to satisfy such creditors of Seller from rentals due to Sellers under the Lease Agreement to be entered into between the parties....

6. That on the date of execution, but not later than June 18, 1981, Seller agrees to supply in writing to Buyer the following information:

(a) A full and detailed description of the security held by each creditor, and a photocopy of any note or instrument securing such claim, including equipment lease or rental agreements, mortgages, financing statements, security agreements or assignments to creditors.

(b) The Seller's Federal Employer's Identification Number and State Sales Tax Number for the State of Tennessee.

(c) A list of any lawsuits now pending, including style and cause number, name and address of the court entertaining such cause.

(d) A list of any judgments obtained and unsatisfied against Seller and a copy of each judgment filed of record.

(e) A list of all sales records for each of the two described locations for the last twelve (12) months.

(f) A list of all employees for each of the two described locations, now employed or employed within the last six (6) months, including the amount of vacation accrued through June 29, 1981.

(g) A photocopy of any and all leases and/or agreements affecting Seller's right to possession and utilization of the two locations.

(h) Seller shall also deliver to Buyer any executed consents to assignments of any leases by the owners of such leases, necessary to transfer the leases to Buyer.

------------

8. Seller and Buyer agree that the parties shall close the purchase and sale as provided herein on June 29, 1981 after the inventory has been completed at the two described stores.

The date and time of closing shall be deemed as the effective date and time of transfer of all property from Seller to Buyer.

At the time of closing Seller shall pay Seller's creditors, according to their secured or unsecured interests in the two stores, from the proceeds of sale as per the amounts contained on the verified list of creditors....

------------

12. If seller shall not timely perform the terms, conditions or covenants of this Agreement, Buyer shall be entitled to rescind the agreement. This section does not limit either party's legal remedies for breach of the agreement.

In addition to the sales agreement, plaintiff and defendant entered into lease agreements for the buildings of these four convenience stores. Because the sales and lease agreements with respect to the Jackson and Henderson stores were performed to the parties' satisfaction, only the Selmer and Savannah agreements are the subject of this appeal. Although there was no specific date of closing in the sales agreement for the Selmer and Savannah stores,

the leases had an effective date of November 26, 1983.

The Selmer lease was for a base term of fifteen years with a monthly rental of $2,500 per month for the first five years and an increase of $150 per month at each five year anniversary. The Savannah lease was also for a base term of fifteen years with a monthly rental of $2,000 per month for the first five years and an increase of $150 per month at each five year anniversary.

In January of 1983, an employee of defendant, Randy Faulkerson, made an inspection of the Selmer and Savannah stores. Approximately five months later, defendant communicated to plaintiff at least one offer to terminate the leases and sales agreement on these two stores. Plaintiff neither accepted nor replied to defendant's offer.

In August of 1983, counsel for First American Bank of Jackson, Tennessee notified defendant that the leases of the four stores had been assigned to the bank in payment of a debt owed to it by plaintiff. Although this notice also contained an attachment showing that the bank had a security interest in the equipment at all four stores, defendant introduced evidence at trial that the attachment was never read by any of defendant's employees.

On November 7, 1983, Ron McAnulty, defendant's Vice–President of Finance, wrote to plaintiff requesting a list of creditors for the Selmer and Savannah stores. Receiving no reply from plaintiff, on November 15 defendant's counsel, James Van Winkle, wrote another letter to plaintiff requesting a verified list of creditors in addition to other documents and information.

On November 21, 1983, plaintiff mailed a verified list of creditors to Van Winkle. Two days later Van Winkle mailed a "Notice of Bulk Sale Transfer" to plaintiff's creditors. On that same day Van Winkle requested a UCC search of the records in the Secretary of State's office and in McNairy and Hardin Counties. In addition, plaintiff agreed to change the closing date to December 3, 1983.

On December 1, 1983, Van Winkle received a response to his UCC search request which indicated that plaintiff had omitted at least two secured creditors from the verified list sent on November 21, 1983. Plaintiff admitted at trial that the verified list was incomplete and erroneous.

On December 2, 1983, plaintiff received a phone call from Van Winkle and was informed that the closing would not take place on December 3. Van Winkle also wrote to plaintiff claiming that plaintiff had materially breached the sales agreement and that defendant had a right to rescind the sales and lease agreements under paragraph 12 of the sales agreement. Defendant neither purchased the equipment and inventory at, nor took possession of, the Selmer and Savannah stores.

Plaintiff then wrote to defendant demanding that defendant perform the sales and lease agreements. Plaintiff further warned that if the transaction was not concluded by December 30, 1983, plaintiff would take steps to mitigate its damages and pursue all legal remedies available.

Plaintiff continued to operate the Selmer and Savannah stores. After January 1, 1983, plaintiff began looking for someone to buy or lease both stores. On February 12, 1984, plaintiff sold the equipment at the Savannah store to Bob Stadinger for $28,000. In addition, plaintiff entered into a lease agreement with Stadinger for the Savannah store for fifteen years starting February 14, 1984. The rent was to be $1,300 per month for the first three years; $1,350 per month for the fourth year; and $1,500 per month for the remaining eleven years. Stadinger subsequently defaulted under this lease and filed for bankruptcy in April of 1985. This store remained unoccupied until September 1, 1985, when plaintiff leased it to Roy Lackey for a period of ten years. The rent under this lease is: $1,250 per month for the first two years; $1,300 per month for the next three years; and $1,500 per month for the final five years. At the time of the trial, Lackey continued to occupy the Savannah store and was paying the required rent.

In February of 1984, plaintiff negotiated with Leon Fields for the purchase of the equipment, inventory and real estate of the Selmer store. The sale price was to be $32,000 for the equipment and $125,000 for the real estate.

Leon Fields, in order to conclude the transaction, conducted a title search of the property and discovered that defendant filed a memorandum of its lease of the Selmer store with the McNairy County Register. Counsel for Fields refused to proceed further with the transaction until defendant's interest in the Selmer store was terminated of record.

Counsel for plaintiff then prepared an "Agreement for Cancellation of Leases." This release noted that the Selmer and Savannah leases had been recorded in McNairy County and that both parties agreed to cancel and terminate these leases.

Fields took this release agreement to defendant. Van Winkle suggested that the release be modified to include the language "As follows, each party forever releases any claim, cause of action, or liabilities arising out of the leases cancelled by this agreement." Steve Butler, defendant's president, signed this revised release but did not acknowledge his signature. Butler then gave the revised release to Fields for delivery back to plaintiff.

Fields took the revised release to plaintiff. Plaintiff's counsel noticed that Butler had not acknowledged his signature but he did not notice the added language. Plaintiff signed the document, sent it back to Fields who then forwarded it to Butler so that he could acknowledge his signature. Butler acknowledged his signature and returned the revised release to Fields. Fields forwarded this release to plaintiff who recorded it in the McNairy County Register's office on March 29, 1984. At no time did defendant inform plaintiff that language had been added to the release agreement. It was not until several months after Fields purchased the Selmer store on April 24, 1984, that plaintiff discovered the added language in the release agreement.

Plaintiff filed the complaint in this action on January 25, 1985. Plaintiff alleged that defendant breached the sales and lease agreements for the Selmer and Savannah stores. Defendant answered the complaint by asserting that plaintiff had failed to comply with a provision of the Tennessee Bulk Sales Act, T.C.A. § 47–6–104 (1963), as required in Paragraph 5 of the sales agreement. Defendant further contended that plaintiff's noncompliance constituted a material breach of contract so that defendant had a right to rescind the transaction pursuant to paragraph 12 of the sales agreement. In addition, defendant affirmatively asserted that the release signed by plaintiff released defendant from all liability under the leases.

After a trial on the merits, the trial court, sitting without a jury, found that plaintiff did not breach the sales agreement and that defendant obtained the release through fraudulent means. Damages were awarded to plaintiff in the amount of $177,-752.27 plus prejudgment interest and defendant has appealed.

Defendant raises four issues on appeal:

1. Did the trial court err in finding that defendant was not justified in rescinding the sales and lease. agreements due to plaintiff's failure to comply with T.C.A. § 47–6–104 (1963) of the Tennessee Bulk Sales Act by tendering an incomplete and erroneous list of creditors?

2. Did the trial court err in not giving effect to the release agreement signed by the parties?

3. Did the trial court err in using a discount rate of 12%, instead of 16%, to compute the damages suffered by plaintiff?

4. Did the trial court err in granting prejudgment interest pursuant to T.C.A. § 47–14–123 (1979)?

Defendant's first issue is whether the trial court erred in finding that defendant was not justified in rescinding the sales and lease agreements, pursuant to paragraph 12 of the sales agreement, due to plaintiff's tender of an incomplete and erroneous list of creditors. The record shows

that the list did not include two secured creditors, the National Bank of Commerce of Jackson, Tennessee and First National Bank of Selmer, Tennessee. These two creditors had security interests in the furniture, fixtures and equipment at the Selmer store. Although First American Bank was included on the list, plaintiff failed to note that this bank also had a security interest in the furniture, fixtures and equipment at the Selmer store. In addition, plaintiff also failed to list the local utility company, Tennessee sales tax liability, and that city and county property taxes were due.

Defendant contends that by tendering this erroneous list, plaintiff engaged in constructive fraud which justified defendant's rescission of the sales and lease agreements. Rule 8.03 of T.R.Civ.P. provides that the allegation of fraud is an affirmative defense that must be specifically pled by setting forth "affirmatively facts in short and plain terms relied upon...."

Rule 12.08 of T.R.Civ.P. also provides that:

"[a] party waives all defenses and objections which he does not present either by motion as hereinbefore provided, or, if he has made no motion, in his answer or reply, or any amendments thereto,...."

Defendant's answer contains no allegation of fraud or constructive fraud on the part of plaintiff. Because this defense was not raised by defendant in its answer, we will not consider it on appeal. *See Citizens Bank & Trust Co. v. Scott & Sanders*, 18 Tenn.App. 89, 72 S.W.2d 1064 (1933).

Defendant also alleges that this erroneous list of creditors did not comply with T.C.A. § 47–6–104 (1963) of the Tennessee Bulk Sales Act and therefore was a breach of paragraph 5 of the sales agreement.

T.C.A. § 47–6–104 provides:

47–6–104. Schedule of property, list of creditors.—(1) Except provided with respect to auction sales (§ 47–6–108), a bulk transfer subject to this chapter is ineffective against any creditor of the transferor unless:

(a) The transferee requires the transferor to furnish a list of his existing creditors prepared as stated in this section; and

(b) The parties prepare a schedule of the property transferred sufficient to identify it; and

(c) The transferee preserves the list and schedule for six (6) months next following the transfer and permits inspection of either or both and copying therefrom at all reasonable hours by any creditor of the transferor, or files the list and schedule in the register's office of the county wherein the transferor maintained his or its principal place of business in this state.

(2) The list of creditors must be signed and sworn to or affirmed by the transferor or his agent. It must contain the names and business addresses of all creditors of the transferor, with the amounts when known, and also the names of all persons who are known to the transferor to assert claims against him even though such claims are disputed. If the transferor is the obligor of an outstanding issue of bonds, debentures or the like, as to which there is an indenture trustee, the list of creditors need include only the name and address of the indenture trustee and the aggregate outstanding principal amount of the issue.

(3) Responsibility for the completeness and accuracy of the list of creditors rests on the transferor, and the transfer is not rendered ineffective by errors or omissions therein unless the transferee is shown to have had knowledge.

The record shows that defendant knew of the omitted creditors at least two days before the December 3rd closing date through the response to its UCC search request. However, the Act provides only that the transfer is not rendered ineffective by errors and omission *unless* the transferee knows about them. Thus, the transfer is only ineffective to those omitted creditors; the entire transaction is not void. "The code drafters used the word 'ineffective,' not 'void' or 'voidable.'" White & Summers Uniform Commercial Code (2nd Ed.1984) § 19–4, p. 769.

Defendant also maintains that although it knew of some creditors that were omitted from the list, there were probably more creditors of which it was unaware. Although there are no Tennessee cases dealing with this issue, authority from other jurisdictions is quite clear that a creditor excluded from the list, who was unknown to the transferee acting in good faith before the sale, is not protected by the Act. The Act is intended to protect the creditors, not the transferee. *Bretch Co. v. Robinowitz,* 275 S.W. 213 (Tex.Civ.App.1925); *McKelvey v. John Schapp & Sons Drug Co.,* 143 Ark. 447, 220 S.W. 827 (1920).

Defendant has cited *Cantrell v. Ring,* 125 Tenn. 472, 145 S.W. 166 (1912) for the proposition that if a transferor, in a bulk sales transaction, gives the transferee an inaccurate and incomplete list of creditors, the sales contract is not enforceable and the transferee is able to rescind the agreement. This case, however, has been limited to its facts by *York v. Ambrose,* 156 Tenn. 314, 300 S.w. 586 (1927). In addition, the Bulk Sales Act in effect at the time *Cantrell* was decided provided that any bulk sale will be "presumed to be fraudulent and void as against the creditors of the seller" unless there is compliance with the Act. *Cantrell, supra,* 145 S.W. at 167. The Act as worded today states only that the transfer is ineffective as to those omitted creditors of which the transferee has knowledge.

Accordingly, we find that defendant did not have the right to rescind the sales and lease agreements due to plaintiff's errors and omissions from the verified list of creditors.

Defendant's second issue is whether the trial court erred in not giving effect to the release signed by the parties. The trial court relied on the decision in *Hand v. Dayton–Hudson,* 775 F.2d 757 (6th Cir. 1985). In *Hand,* an employee was fired by the employer due to structural changes in the company. The employer offered the employee a lump sum settlement if the employee agreed to release the employer from any claims he may have against the employer. The employee agreed to sign the release given to him by the employer. The employee took the release, but before signing made alterations in material provisions of the release. The employee's alterations were undetected by the employer because the employee retyped the release on a typewriter identical to the one used to type the original release. The employee also used the same headings in addition to the same number and structure of paragraphs as was used in the original release. Unaware that changes had been made, the employer signed the release. The Court held that the employee committed a fraud upon the employer by not informing the employer of the changes in the release. *Id.* at 759.

Defendant contends that the *Hand* case, decided on Michigan law, is not applicable in this case. Generally, the law in Tennessee is that the duty to disclose arises only in three certain circumstances:

1. When there is a previous definite fiduciary relation between the parties;

2. Where it appears one or each of the parties to the contract expressly reposes a trust and confidence in each other;

3. Where the contract or transaction is intrinsically fiduciary and called for perfect good faith. The contract of insurance is an example of this last class.

*Domestic Sewing Machine Co. v. Jackson,* 83 Tenn. 418, 424–25 (1885); *Macon City Livestock Market v. Kentucky State Bank,* 724 S.W.2d 343, 349 (Tenn.App. 1986); *Dozier v. Hawthorne Development Company,* 262 S.W.2d 705, 711 (Tenn.App. 1953). Defendant contends that since none of these three situations is present in this case, it was not required to disclose the additional language added to the release. We disagree.

The three above cited cases are distinguishable from the case at bar. Those cases did not deal with a writing that was intentionally altered so that the contents were changed while the appearance of the document remained the same. In this case, the record shows that the language added to the release was typed on a typewriter

similar to the one on which the original release was typed. In addition, defendant used the same margins that plaintiff used in the original release. In this situation, we hold that defendant was under a duty to disclose the added language because this language had been carefully typed so that plaintiff would never suspect that changes had been made in the release.

Defendant also contends that plaintiff should nonetheless be bound by the release because it is generally held that one is bound by the contracts he signs. In addition, it is no excuse that the contract was not read before signing. *Dixon v. Manier*, 545 S.W.2d 948 (Tenn.App.1976). This general rule, however, "is not applicable when neglect to read is not due to carelessness alone, but was induced by some stratagem, trick, or artifice on part of one seeking enforcement of the contract." *Hand, supra*, at 760 (citations omitted).

Consequently, the release signed by the parties is void and unenforceable due to defendant's failure to inform plaintiff of the added language.

Defendant's third issue is whether the trial court by using a discount factor of 12%, instead of 16%, to determine the amount of damages suffered by plaintiff. At trial, each party introduced its own expert testimony regarding the proper discount rate. The trial court accepted the testimony of plaintiff's expert that the proper rate of discount was 12%.

Pursuant to Rule 13(d) T.R.A.P., findings of fact made by the trial court are presumed correct unless the preponderance of the evidence is otherwise. In addition, any conflict in testimony requiring the determination of the credibility of a witness rests in the first instance with the trial court and will be given great weight by the appellate court, unless other real evidence compels a contrary conclusion. *Linder v. Little*, 490 S.W.2d 717 (Tenn.App.1972).

There is no evidence in the record that would warrant a finding that the trial court erred in its determination of the discount rate. Therefore, the trial court was correct in using a 12% discount rate in determining plaintiff's damages.

Defendant's last issue is whether the trial court erred in awarding prejudgment interest in the amount of 10% per annum pursuant to T.C.A. § 47–14–123 (1979). The decision of whether to award prejudgment interest is within the sound discretion of the trial court and will not be disturbed on appeal unless there has been a clear abuse of discretion. *Schoen v. J.C. Bradford & Co.*, 667 S.W.2d 97 (Tenn.App. 1984). In addition, the Supreme Court of this State has explicitly sanctioned the awarding of prejudgment interest on past rent due under a breached lease agreement. *Performance Systems, Inc. v. First American National Bank*, 554 S.W.2d 616 (Tenn.1977). We find that the trial court did not abuse its discretion in awarding prejudgment interest.

The decision of the trial court is, in all respects, affirmed. Costs are assessed against appellants.

TOMLIN, P.J. (W.S.), and FARMER, J., concur.