# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE

FILED

February 24, 1999

Cecil Crowson, Jr.
Appellate Court Clerk

MIDWEST BRONZE, INC., )
)
    Plaintiff/Appellant, ) Montgomery Chancery No. 95-78-124
)
v. )
) Appeal No. 01A01-9707-CH-00358
OUTLAW AIRCRAFT SALES, INC., )
)
    Defendant/Appellant. )

APPEAL FROM THE CHANCERY COURT OF MONTGOMERY COUNTY
AT CLARKSVILLE, TENNESSEE

THE HONORABLE ALEX W. DARNELL, JUDGE

For the Plaintiff/Appellant:

Douglas Berry
Nashville, Tennessee

For the Defendant/Appellee:

Gregory D. Smith
Clarksville, Tennessee

**AFFIRMED IN PART, REVERSED
IN PART, AND REMANDED**

HOLLY KIRBY LILLARD, J.

CONCUR:

W. FRANK CRAWFORD, P.J., W.S.

ALAN E. HIGHERS, J.

## OPINION

This is a breach of contract case. The plaintiff entered into a contract to purchase an airplane, subject to inspection. A deposit was paid on the airplane. Upon inspection, the plaintiff found defects and rejected the aircraft. The defendant sought to remedy the defects and refused to return the deposit. The plaintiff filed suit for breach of contract and under the Tennessee Consumer Protection Act. The trial court awarded the plaintiff a judgment for the amount of the deposit, but permitted the defendant to set-off monies it had spent to modify the airplane in anticipation of sale to the plaintiff. It declined to award prejudgment interest or damages under the Consumer Protection Act. The plaintiff appeals. We reverse in part the award of set-off damages, reverse the denial of prejudgment interest, and affirm the denial of damages under the Consumer Protection Act.

On December 29, 1994, the plaintiff, Midwest Bronze, Inc. ("Midwest"), entered into a written contract (the "Agreement") with the defendant, Outlaw Aircraft Sales, Inc., ("Outlaw") for the purchase of a 1976 Cessna 182P aircraft for $62,650, subject to inspection by Midwest. The purchase price included the installation of additional equipment requested by Midwest. The contract required Midwest to make a $10,000 earnest money deposit, which was delivered on December 29. On that date, the airplane was being repaired and a complete inspection was impossible. Consequently, the contract provided for a later inspection and test flight. The pertinent provisions of the Agreement state:

> 4.  Acceptance of Aircraft. On or about <u>December 29, 1994</u>, Seller delivered the Aircraft to <u>Clarksville, Tennessee</u> where Purchaser conducted a pre-purchase inspection . . . . Purchaser shall pay for cost of its pre-purchase inspection. Purchaser shall notify Seller in writing by use of Exhibit B of Purchaser's acceptance (subject to the correction by Seller of any listed deficiencies) or <u>rejection of the Aircraft upon completion of pre-purchase inspection and test flight.</u> Should Seller refuse to correct the discrepancies, if any, Purchaser shall have [the] right, at its election, to reject acceptance of Aircraft. Acceptance or <u>rejection of the Aircraft shall be at Purchaser's sole judgment</u>. If Aircraft is not acceptable, this Agreement will be null and voided, and the parties shal [sic] have no further liability herein, except the <u>earnest money deposit shall be promptly returned in full to Purchaser</u>. (emphasis in original)

After the Agreement was signed, Joe Pendergraft with Midwest Bronze wrote a letter to the First National Bank of Clinton in Clinton, Missouri, detailing the computation of the purchase

price and the additional equipment to be installed. The letter states:

Computation for final price is as follows:

Asking price ------------------------------------------------ $63,500.00

Negotiated price, but seller must add equipment: ---------- $62,250.00
    1. JPI Instruments EDM-700 Scanner:
       Trade-A-Plane Price: ------------------------ $1,695.00
       Estimate 10 hours labor @ $40/hour ------ +$400.00
          Total for JPI Scanner ------------------ $2,095.00

    2. Tanis 6 cylinder engine heater:
       Trade-A-Plane Price: ------------------------ $486.00
       Estimate 6 hours labor @ $40/hour -------- +240.00
       Total for Tanis heater ------------------ $726.00

TOTAL ADDITIONS TO EQUIPMENT: **$2,821.00 (Equipment has been added to spec sheet: Exhibit A)**

Seller to add VOX intercom, with jacks for front seat, and --- +400.00
an extension "plug in" box for passengers in back seat.
Buyer to pay.

**TOTAL SELLING PRICE:**             **$62,650.00**

TOTAL SAVINGS:
    Asking Price of $63,500 less Final Price of $62,250 -- $1,250.00**
      **Computations do not include $400.00 for installing VOX intercom.
      Seller to Install Additional Equipment ------------$2,821.00
          Total Savings to Buyer -------------- $4,071.00

The letter indicates further that the additional equipment would be installed prior to the pre-purchase inspection. It notes specifically that: "paragraph 4 of the contract allows the buyer to list all deficiencies found, and seller shall correct. If 'seller should refuse to correct the discrepancies,' buyer has an option to refuse the plane."

After the additional equipment was installed, the aircraft was transported to Hendersonville, North Carolina for inspection. Outlaw paid for transportation for the pre-purchase inspection. Aerolina Incorporated conducted the pre-purchase inspection in Hendersonville on February 9, 1995. The inspection revealed seventeen problems with the airplane, including an engine compression problem requiring extensive repairs. Midwest's president informed Outlaw verbally and in writing that he had decided to reject the airplane because of these findings. Midwest then demanded the return of the $10,000 deposit. Outlaw took the position that, under the contract, it was entitled to attempt to correct the deficiencies. It refused to refund the money, and Midwest filed this lawsuit.

Midwest's complaint requested return of the $10,000 deposit, prejudgment interest on the deposit amount, and damages under the Tennessee Consumer Protection Act, Tennessee Code

Annotated §§ 47-18-101 to 121. In the claim under the Consumer Protection Act, Midwest alleged that Outlaw's failure to return the deposit constituted an unfair or deceptive practice. See Tenn. Code Ann. § 47-18-104 (Supp. 1998).

At the bench trial, Outlaw argued that the intent of the Agreement was to provide Outlaw an opportunity to correct the listed deficiencies prior to Midwest's decision to reject the aircraft. Outlaw's witnesses testified that the deficiencies listed by Midwest could be remedied. Midwest argued that the Agreement gave Midwest unfettered discretion to reject the aircraft, without affording Outlaw an opportunity to correct any deficiencies. It sought a full refund of the $10,000 earnest money.

Midwest's representative, Joe Pendergraft, acknowledged at trial that Outlaw installed additional equipment on the aircraft at his request. Pendergraft explained that he is blind in one eye, and "asked to have some controls put onto the engine and – so that I could feel more comfortable if something were going wrong with the engine flying with one eye." In addition to this extra equipment, Pendergraft requested a special engine heater, explaining, "I fly in the ice and snow a lot, and you put that on there to warm the engine up before you take off." Pendergraft noted that he could have purchased the aircraft "less the add-ons," but instead "negotiated a price for" the add-ons.

After the trial, the trial court awarded Midwest the $10,000 deposit. However, Outlaw was permitted to set-off the cost of transportation for the pre-purchase inspection and the cost of the additional equipment, leaving a total award to Midwest of $6,950. The trial court declined to award prejudgment interest and made no award of damages or attorney's fees under the Tennessee Consumer Protection Act. From this decision, Midwest now appeals.

On appeal, Midwest argues that the trial court erred in permitting Outlaw to set-off the cost of transportation to the inspection site and the cost of installing the additional equipment requested by Midwest. Midwest maintains that Outlaw did not plead set-off, and that there is no provision in the Agreement allowing set-off of costs for modifications made at the purchaser's request. Midwest also argues that the trial court erred in not awarding prejudgment interest. Finally, Midwest contends that it was entitled to damages, including attorney's fees and treble damages, under the Tennessee Consumer Protection Act.

We review the trial court's findings *de novo*, with a presumption of the correctness of the factual findings of the trial court. **See** Tenn. R. App. P. 13(d). No such presumption of correctness attaches to the trial court's conclusions of law. **See Carvell v. Bottoms**, 900 S.W.2d 23, 26 (Tenn. 1995).

Midwest alleges first that the trial court erred in allowing set-off for the cost of modifications it requested and for the cost of transport to the site of the pre-purchase inspection. Midwest contends that the claim of set-off was not properly pled, and that the trial court erred in allowing the reduction in damages.

In its original Answer, Outlaw alleged "[t]he Defendant specifically pleads accord and satisfaction, and set-off in amounts to be determined at a subsequent time." Outlaw then filed an Amended Answer that did not mention set-off. Midwest argues that the Amended Answer superseded the original Answer, and that consequently Outlaw failed to plead set-off. Outlaw maintains that the Amended Answer supplemented the original Answer, rather than superseding it. Outlaw also notes that evidence of set-off was admitted at trial without objection by Midwest.

The trial record in this case contains descriptions and costs of the additional items installed in the aircraft before inspection. Midwest has pointed to no place in the record in which it objected to the introduction of such evidence. Regardless of whether Outlaw's original Answer pleading set-off was superseded or supplemented by the Amended Answer, clearly the issue of set-off was tried without objection. **See** Tenn. R. Civ. P. 15.02. The award of set-off will not be reversed on this basis.

Midwest argues that the trial court erred in permitting set-off because the Agreement did not specifically provide that Outlaw would be permitted to set-off the cost of the additional equipment installed at Midwest's request. The trial court ruled that Midwest could reject the aircraft and recoup its earnest money, but permitted set-off of these costs because Midwest's right to reject "must be tempered by equity."

In the letter written by Pendergraft the day after execution of the Agreement, he clearly contemplates that the equipment would be added prior to his pre-purchase inspection. He describes in his testimony negotiating a separate price for the additional equipment, which was then added into the total negotiated purchase price. However, the trial testimony does not address whether Outlaw could recoup the cost of the additional equipment upon resale of the aircraft. Pendergraft had

4

Outlaw install additional controls to accommodate his blindness in one eye, and a special engine heater for flying in ice and snow. It is conceivable that the nature of the specialized equipment would make it difficult for Outlaw to recoup its cost upon resale. However, the burden was on Outlaw to establish its losses and damages. Generally, the party claiming setoff has the burden of establishing the right to setoff. *Polk v. Torrence*, 218 Tenn. 680, 405 S.W.2d 575, 576 (1966). Had Outlaw established that it would likely not recoup the cost of the equipment upon resale, setoff might be justified. However, in the absence of such evidence, we are compelled to conclude that the record does not support the award of setoff. The award of setoff damages to Outlaw for the cost of the added equipment must be reversed. However, since the Agreement provides that Midwest would pay for the cost of the inspection the award of setoff for the cost of transporting is affirmed.

Midwest also argues that the trial court erred in failing to award prejudgment interest. Prejudgment interest is available in cases where the amount of the debt is certain. Tennessee Code Annotated § 47-14-123 provides that prejudgment interest may be awarded as an element of damages "in accordance with the principles of equity at any rate not in excess of a maximum effective rate of ten percent (10%) per annum." Tenn. Code Ann. § 47-14-123 (1995); *see Squibb v. Smith*, 948 S.W.2d 752, 756-57 (Tenn. App. 1997); *Schoen v. J.C. Bradford & Co.*, 667 S.W.2d 97, 101 (Tenn. App. 1984). "The award of prejudgment interest is within the sound discretion of the trial court and the decision will not be disturbed upon appellate review unless the record reveals a manifest and palpable abuse of discretion." *Otis v. Cambridge Mut. Fire Ins. Co.*, 850 S.W.2d 439, 446 (Tenn. 1992); *see also Teague Bros., Inc. v. Martin & Bayley, Inc.*, 750 S.W.2d 152, 158 (Tenn. App. 1987). Prejudgment interest is not considered a penalty imposed upon the defendant, but is awarded "in accordance with the principles of equity." *Otis*, 850 S.W.2d at 446 (citing *In re Estate of Davis*, 719 S.W.2d 526 (Tenn. App. 1986)).

At trial, Midwest relied on the provision in the Agreement stating that acceptance or rejection of the aircraft would be "at Purchaser's sole judgment" and that "the earnest money deposit shall be promptly returned in full to Purchaser." Outlaw maintained that the Agreement gave Outlaw the right to attempt to correct the deficiencies, and that Midwest could not simply reject the aircraft without permitting Outlaw to remedy the defects. However, the Agreement refers to the Seller correcting deficiencies if the purchaser accepts the aircraft subject to the correction of deficiencies. In other words, the right to correct deficiencies comes into play only after the purchaser accepts the

5

aircraft. In this case, Midwest never accepted the aircraft, subject to the correction of deficiencies or otherwise. Therefore, under the language in the Agreement, Midwest had the right, in its "sole discretion," to reject the aircraft. The Agreement clearly provides for the prompt return of the earnest money. Since the amount involved is a sum certain, and the Agreement clearly provides for its prompt return, the denial of prejudgment interest was an abuse of the trial court's discretion. The decision of the trial on this issue is reversed, and the judgment is modified to include an award of prejudgment interest on the $10,000 earnest money minus the setoff for the costs of transportation for inspection.

Midwest also argues that it should have been granted relief under the Tennessee Consumer Protection Act, Tennessee Code Annotated §§ 47-18-101 to 121. Midwest bases its claim under the Consumer Protection Act on the statutory provision that prohibits "[r]epresenting that a consumer transaction confers or involves rights, remedies or obligations that it does not have or involve or which are prohibited by law." Tenn. Code Ann. § 47-18-104(b)(12) (Supp. 1998).

Midwest argues that Outlaw violated this provision by directly contradicting the terms of its own contract, which provided that upon rejection of the airplane, "the earnest money deposit shall be promptly returned in full to purchaser." Midwest asserts that it was induced to enter into the Agreement by the written assurance that it had an absolute right to refund of its deposit. By later denying this remedy, Midwest argues that Outlaw was "representing that [the]. . . transaction confer[red] . . . rights [and] remedies . . . that it [did] not have." *Id.* Midwest also claims that the Consumer Protection Act applies because Outlaw misrepresented the condition of the airplane, causing the plaintiff to incur additional inspection expenses.

The Tennessee Consumer Protection Act is "to be liberally construed to protect consumers and others from those who engage in deceptive act[s] or practices." *Haverlah v. Memphis Aviation, Inc.*, 674 S.W.2d 297, 305 (Tenn. App. 1984). The Act allows victims of unfair or deceptive acts or practices to recover actual damages. *See* Tenn. Code Ann. § 47-18-109(a)(1) (1995). The trial court may also award attorney's fees. *See id.* § 47-18-109(e)(1). If the trial court finds that the defendant willfully or knowingly violated the Act, the court may award treble damages. *See id.* §47-

18-109(a)(3). Factors to be considered when determining whether to award treble damages include:

    (A)  The competence of the consumer or other person;

    (B)  The nature of the deception or coercion practiced upon the consumer or other person;

    (C)  The damage to the consumer or other person; and

    (D)  The good faith of the person found to have violated the provisions of this part.

*Id.* § 47-18-109(a)(4).

The gist of Midwest's claim in this case is Outlaw's breach of the contractual provision for return of Midwest's earnest money. Outlaw interpreted the Agreement as providing it an opportunity to remedy deficiencies prior to Midwest's rejection. Under these circumstances, the evidence is insufficient for an award of damages under the Tennessee Consumer Protection Act. The evidence does not preponderate against the trial court's decision not to award damages under the Tennessee Consumer Protection Act, and this decision is affirmed.

In sum, the trial court's decision to permit Outlaw to set-off the costs of transportation for inspection is affirmed. The trial court's decision to permit Outlaw to setoff the cost of the additional equipment is reversed. The trial court's decision not to award prejudgment interest is reversed, and the cause is remanded for an award of prejudgment interest on the $10,000 earnest money minus the setoff for transportation costs. The trial court's decision not to award damages under the Tennessee Consumer Protection Act is affirmed.

The decision of the trial court is affirmed in part, reversed in part, and remanded as set forth above. Costs are assessed equally against Appellant and Appellee, for which execution may issue, if necessary.

 

 

_____
**HOLLY KIRBY LILLARD, J.**

**CONCUR:**

_____
**W. FRANK CRAWFORD, P. J., W.S.**

_____
**ALAN E. HIGHERS, J.**

7